800 So.2d 267 (2001)
Nellie JONES, as Personal Representative of the Estate of Sonny Jones, deceased, Appellant,
v.
WILLIAMS PAWN & GUN, INC., a corporation for profit, Appellee.
No. 4D00-3723.
District Court of Appeal of Florida, Fourth District.
October 10, 2001.
Rehearing Denied December 13, 2001.
*269 Jack Sobel of Law Offices of Jack Sobel, P.A., Stuart, for appellant.
Scott A. Mager and Gary S. Gaffney of Mager & Associates, P.A., and Jack D. Luks and Paul S. Jones of Luks, Koleos & Santaniello, P.A., Fort Lauderdale, for appellee.
SHAHOOD, J.
This action arose from the sale of a handgun by appellee, Williams Pawn & Gun, Inc., to Jamie Lofton, a mentally retarded man, who used the gun days later in a robbery attempt, killing appellant's husband, Sonny Jones. As the Personal Representative of her husband's estate, appellant sued the pawn shop for wrongful death as well as a violation of section 790.17, Florida Statutes (1997), which makes it a crime to sell a weapon to a person of unsound mind. Appellant claimed that at all times relevant, Lofton was of unsound mind and mentally incompetent.
Williams Pawn & Gun moved for final summary judgment alleging that there was no evidence that the pawn shop had actual or constructive knowledge of Lofton's alleged unsound mind or mental condition at the time of the handgun sale. Thus, there was no evidence that the pawn shop failed to comply with section 790.17, Florida Statutes.
Appellant moved for partial summary judgment alleging that the deposition testimony of Lofton's mother established that Lofton was of "unsound mind" when the pawn shop sold him the gun. Lofton was determined to be mentally and emotionally retarded since he was a young boy. Appellant claimed that under section 790.17(1), it was a crime to sell a gun to a person of unsound mind, even in the absence of any showing that the seller did so knowingly and willingly. Thus, the pawn shop was strictly liable for the wrongful death of the decedent. Appellant also raised a negligence per se argument.
In its order on the parties' motions for summary judgment, the trial court found that it was unrebutted that Lofton was mentally retarded at the time of the gun purchase and could read only at a second grade level. The court held that it was a crime to sell a firearm to a person of unsound mind, denied the pawn shop's motion for summary judgment, but granted appellant's motion for partial summary judgment on the negligence per se issue.
Prior to the issuance of the court's order, the pawn shop moved for a declaratory judgment on the constitutionality of section 790.17. The pawn shop then moved for rehearing on the summary judgment motion, arguing that mentally retarded persons are not categorically of unsound mind. As a result of said motion, the court thereafter requested memoranda of law on the ability of mentally retarded persons to obtain driver's licenses.
*270 Prior to ruling on the issue, the parties advised the court that all issues in the case had been resolved, except as to whether section 790.17 was unconstitutionally vague as applied to the facts of the case. Further, the parties agreed that a trial was unnecessary. The parties stipulated to damages and agreed that whichever party prevailed on the pawn shop's motion for declaratory judgment as to the constitutionality of section 790.17 as it applied to the term "unsound mind," would be entitled to judgment.
In entering Final Summary Judgment for the pawn shop, the court made certain findings of fact: (1) that the pawn shop sold the firearm to Lofton which Lofton used to kill Sonny Jones; (2) that the evidence in the record indicated that Lofton was mildly retarded at the time of sale; and (3) that the parties settled all claims except that of alleging strict liability under section 790.17, and that the total damages attributable to the incident were $275,000, against which the pawn shop was entitled to a set-off of $75,000 for monies previously paid to appellant. The court entered summary judgment in favor of the pawn shop, holding that "[s]ection 790.17, Florida Statutes, does not define the term `person of unsound mind' and as applied to this case, the statute is therefore unconstitutionally vague." We reverse.
The standard for testing vagueness under Florida law is whether the statute gives a person of ordinary intelligence fair notice of what constitutes forbidden conduct. See Sieniarecki v. State, 756 So.2d 68, 74 (Fla.2000)(quoting Brown v. State, 629 So.2d 841, 842-43 (Fla.1994)). The language of the statute must provide a definite warning of what conduct is required or prohibited, measured by common understanding and practice. See id. Even in penal statutes, the legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague. See State v. Hagan, 387 So.2d 943, 945 (Fla.1980).
In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term, and where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense. See State v. Barnes, 686 So.2d 633, 637 (Fla. 2d DCA 1996), review denied, 695 So.2d 698 (Fla.1997); see also Plante v. Dep't of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering, 685 So.2d 886 (Fla. 4th DCA 1996), review denied, 695 So.2d 701 (Fla.1997). In the absence of such a definition, the plain and ordinary meaning of the term can be ascertained by reference to a dictionary. See Barnes, 686 So.2d at 637. Any doubts as to the constitutionality of the statute must be resolved in favor of its constitutionality. See Scudder v. Greenbrier C. Condo. Ass'n, 663 So.2d 1362, 1368 (Fla. 4th DCA 1995) (citing Dep't of Legal Affairs v. Rogers, 329 So.2d 257, 263 (Fla. 1976)). A statute is not unconstitutionally vague merely because it is subject to differing interpretations. See Scudder, 663 So.2d at 1368.
The traditional rule is that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." Sieniarecki, 756 So.2d at 74-75. "If the record demonstrates that the [defendant] engaged in some conduct clearly proscribed by the plain and ordinary meaning of the statute, then he cannot successfully challenge it for vagueness nor complain of its vagueness as applied to the hypothetical conduct of others." Sieniarecki, 756 So.2d at 74-75. Thus, the instant vagueness claim must be examined in light of the facts pertinent to *271 this case before analyzing other hypothetical applications of the law. See Barnes, 686 So.2d at 637; Sieniarecki, 756 So.2d at 74-75.
In this case, we hold that section 790.17 is not unconstitutionally vague as applied. Section 790.17, Florida Statutes (1997), provides as follows in relevant part:
(1) A person who sells, hires, barters, lends, transfers, or gives any minor under 18 years of age any dirk, electric weapon or device, or other weapon, other than an ordinary pocketknife, without permission of the minor's parent or guardian, or sells, hires, barters, lends, transfers, or gives to any person of unsound mind an electric weapon or device or any dangerous weapon, other than an ordinary pocketknife, commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
(emphasis supplied).
In the absence of a statutory definition, words of common usage are construed in their plain and ordinary meaning which can be ascertained by reference to a dictionary. See Sieniarecki, 756 So.2d at 75. Since section 790.17 does not define the term "of unsound mind," Black's Law Dictionary 1539-40 (6th ed.1990), defines "unsound mind" as follows:
Non-legal term referring to one who from infirmity of mind is incapable of managing himself or his affairs. The term, therefore, includes insane persons. It exists where there is essential deprivation of the reasoning faculties, or where a person is incapable of understanding and acting with discretion in the ordinary affairs of life.... But eccentricity, uncleanliness, slovenliness, neglect of person and clothing, and offensive and disgusting personal habits do not constitute unsoundness of mind.
Under the facts of this case, Lofton falls squarely within the definition of a person of "unsound mind." It is undisputed that Lofton is mentally retarded. The evidence submitted to the trial court established that since grade school, Lofton had been diagnosed as emotionally and mentally retarded and had a second grade reading level. Lofton's mother testified that he was incapable of managing himself or his affairs. Since elementary school, Lofton attended special classes for the mentally handicapped, he always lived with his parents or his grandmother, he never held a job, he received SSI disability benefits from social security, he could not drive, and he did not know how to handle money or balance a checkbook. While the trial court adopted the pawn shop's expert's opinion that Lofton was only mildly retarded, the testimony of Mrs. Lofton and Dr. Landrum demonstrates otherwise. Even if mildly retarded, Lofton is incapable of caring for himself or his affairs.
Under its plain and ordinary meaning, section 790.17 gives a person of ordinary intelligence a definite warning of what conduct is required or prohibited. Although the term "unsound mind" might be subject to differing interpretations, that does not render the statute vague. See Scudder, 663 So.2d at 1368. Clearly, the statute gives notice that it is a violation to entrust or to sell a dangerous weapon, such as a firearm, to a person like Lofton who because of his mental retardation, is incapable of caring for himself. Whether the pawn shop knew or should have known about Lofton's mental abilities when it sold him the gun was relevant only to appellant's negligent entrustment and negligence per se claims, which are no longer part of the case. See generally Kitchen v. K-Mart Corp., 697 So.2d 1200 (Fla.1997).
Because we hold that the statute is not unconstitutionally vague as applied, the pawn shop lacks standing to raise a facial vagueness challenge. See Sieniarecki, 756 So.2d at 76 (one who engages in *272 some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others); Jean v. State, 764 So.2d 605, 607 (Fla. 4th DCA 1999)(if the statute is not vague when considered under the facts at hand, then, by definition, it cannot be vague in all of its applications).
In accordance with the parties' stipulation that whichever party prevailed on the strict liability claim under section 790.17 would be entitled to judgment, we reverse and remand with directions that judgment be entered in favor of appellant.
REVERSED AND REMANDED.
STONE, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
Although the majority opinion does not expressly say so, it assumes that vagueness would be a defense in a negligence action for damages where the duty derives from a statute. The opinion therefore proceeds directly to the claim of vagueness and disposes of the case by holding that the statute is not impermissibly vague for the purposes presented here. I write to address the undiscussed premise, that a charge of vagueness could defeat a negligence claim for damages.
If this were a criminal case, vagueness could be a serious challenge, one as to which I should not here express any outcome. See Papachristou v. Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) ("Living under a rule of law entails various suppositions, one of which is that `(all persons) are entitled to be informed as to what the State commands or forbids."'); Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (vagueness may invalidate criminal law for either of two reasons: (1) law may fail to provide kind of notice enabling ordinary people to understand what conduct is prohibited, and (2) law may authorize and even encourage arbitrary and discriminatory enforcement); Bouie v. City of Columbia, 378 U.S. 347, 351, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) ("The ... principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." (quoting United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954)); Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939) (all persons are entitled to be informed as to what the State commands or forbids); McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931) ("[I]t is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.")). As these citations demonstrate, the vagueness doctrine is tied to the notion that punishment cannot be inflicted on account of conduct that is not clearly and unambiguously prohibited.
The application of vagueness theory as a defense to a claim for money damages founded on negligence is not readily manageable to my eye, and these litigants have done nothing to explain how this theory can be worked out. Indeed no one in the lower court raised any question as to the applicability of the vagueness theory of defense; nor has it been discussed in any of the briefs here. We must therefore theorize as to how an ambiguity in this statute would affect plaintiffs claim.
In an ordinary negligence action for personal injuries, the judicial power of the State has not been set into motion because the State has commanded or forbidden something the violation of which may be punished. Rather in a civil damages action based on negligence, plaintiff claims *273 there is a common law duty, one which may be founded on a statute or simply by reason of the circumstances. While the payment of money damages may be an imposition, it is not inflicted as punishment. Instead the rationale is that because defendant has not behaved as any reasonable person would under like circumstances he therefore owes a debt to the victim for the damages he has caused.
In a negligence action, often we do not know if there really was a duty until a jury finds that the circumstances in the suit did in fact require a reasonable person to act or refrain from acting in a specific way. The identities of the persons protected by the duty may have been unclear at the time of the conduct, but we nevertheless do not recoil from imposing liability for damages so long as defendant could reasonably have foreseen that someone might be injured as a result of his conduct. Thus if a jury decides in hindsight that the circumstances should have been understood by any reasonable person to impose a duty, one might wonder how this defense of vagueness would logically affect or even bar such a claim.
In this case, the duty alleged is not to sell a firearm to a person of unsound mind. The contention is that the statute does not satisfactorily delineate who may not receive firearms, that the term "person of unsound mind" is too vague to give a defendant reasonable notice of just who is covered by that locution. But that is hardly different from the general duty to take reasonable care to protect against causing harm to anyone who might foreseeably be injured by one's conduct. It is the nature of the negligence cause of action to require caution and attention against possible harm even as to specifically unidentifiable objects, so long as the prospect of harm is foreseeable.
No one suggests that harm from furnishing firearms to persons of unsound mind is not readily foreseeable. Under defendant's argument, the difficulty is in identifying who is of unsound mind. But that difficulty cannot possibly mean that a defendant should not be liable in negligence for violating this duty. Rather the difficulty merely suggests the nature and extent of the precautions that a reasonable person should undertake to guard against furnishing a firearm to someone who might prove to be of unsound mind. In other words, the reasonably prudent seller of firearms has a duty to employ procedures to screen potential buyers in some way making it unlikely that persons of unsound mindwhatever meaning one gives that termdo not acquire them.
Thus this defense of vagueness to negligence actions is not apparent to me, and no party to this case has articulated any plausible theory to sustain it. For these reasons, I concur only in the result and do not wish to be understood as having decided that the statute in suit isor, for that matter, is notunconstitutionally vague with regard to criminal charges that might be brought under it. I agree only that vagueness has not been shown to have been a defense in this civil action.