944 So.2d 450 (2006)
Steven GROHS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-2016.
District Court of Appeal of Florida, Fourth District.
November 22, 2006.
Rehearing Denied January 11, 2007.
*451 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine Y. McIntire, Assistant Attorney General, West Palm Beach, for appellee.
ON MOTION FOR REHEARING; MOTION FOR REHEARING EN BANC; MOTION FOR CERTIFICATION OF QUESTION OF GREAT PUBLIC IMPORTANCE
PER CURIAM.
The State filed a motion for rehearing, motion for rehearing en banc, and motion for certification of question of great public importance. The motions for rehearing en banc and certification of question of great public importance are denied, but the motion for rehearing is granted. We therefore withdraw our previous opinion and substitute the following in its place.
Steven Grohs was convicted of violating Florida Statutes section 847.0135(3) as charged in the Information filed against him and was sentenced to 28.2 months in prison. We affirm.
Steven Grohs was charged by Information as follows:

*452 [K]nowingly and unlawfully utilized a computer on-line service, Internet service or local bulletin board service to seduce, solicit, lure or entice or attempt to seduce, solicit, lure or entice a child or another person believed by Steven Grohs to be a child to commit any illegal act described in chapter 794, relating to sexual battery; chapter 800, relating to lewdness and indecent exposure; or chapter 827, relating to child abuse, contrary to Florida Statute 847.0135(3).
Florida Statutes section 847.0135(3) provides:
Any person who knowingly utilizes a computer on-line service, Internet service, or local bulletin board service to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child or another person believed by the person to be a child, to commit any illegal act described in chapter 794, relating to sexual battery; chapter 800, relating to lewdness and indecent exposure; or chapter 827, relating to child abuse, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
As such, Grohs was charged with violating section 847.0135(3) in any and every way it can be violated and was not charged solely with soliciting or attempting to solicit a child or person believed to be a child.
An undercover police operation gave rise to the charge against Grohs. In response to a tip regarding Grohs's computer conduct, Lantana Detective Todd Dwyer established an America Online account posing as a fifteen-year-old boy named Bobby. He then entered a chat room entitled "Young Men" in which Grohs was participating. Grohs began to chat with "Bobby." Following an exchange of introductory information, Grohs indicated that he hoped he and "Bobby" could become friends but admitted that his age might pose a problem. Grohs then forwarded a picture of himself to "Bobby," asked for a picture or physical description from "Bobby," and learned that "Bobby" was a high school wrestler. Grohs then revealed that he was thirty-seven, and "Bobby" responded that they could be friends but that he might be too young because he was fifteen. Grohs replied: "We don't have to do anything that normal friend[s] do. I'd like to be your friend is all . . . I am not a person to want you to do what you're not interested in. That's all, friendship." "Bobby" then directed Grohs to "lead the way." The conversation continued and "Bobby" asked Grohs whether he was gay. Grohs responded: "I've dated lots of girls, but I['d] rather be with a guy I like." Grohs concluded the conversation by giving "Bobby" his cell phone number.
The online chat between Grohs and "Bobby" led to both an exchange of e-mails between Grohs and Dwyer and two telephone conversations between Grohs and Officer Jason Sharon posing as "Bobby." The first e-mail was sent from Grohs to "Bobby" and stated the following:
I'm very cool with 15. Friends will be great and we can be more, and do whatever makes you happy. If you're comfortable, as I do and am! You asked me to lead on, and I can, will you steer us? I'm glad we met today and hope we can stay best friends for a longtime to come.
"Bobby" responded by telling Grohs that he looked cute, indicating that he did not have much experience, explaining that he was willing to follow Grohs's lead, stating that "what ever u want to do is cool with me," and indicating that "if u want more that's cool too."
Grohs replied to "Bobby's" e-mail:
I am happy to know that you think me to be cute. From your description, I know you to be cute too. I will work hard to earn your trust. I'd be happy to *453 do anything with and/or for you right now. I just want you to be comfortable and happy with me. Once we get to know each other better maybe we can become b/fs, if that is cool with you. I really look forward to talking to you on the phone, and, more so, to meeting you when you're ready. We can meet in a public place just as an introduction and to see how we get along.
"Bobby" then responded: "I would luv to meet u I feel like I know u. We can have fun together. When u say more do u really mean MORE. Tell what your into and what u want to do with me and what u like."
Thereafter, the first telephone conversation between Grohs and "Bobby" began with a discussion about cars. Grohs then asked "Bobby" when he wanted to meet. "Bobby" indicated that he might be able to meet the next day, and Grohs responded that it was great even if they only met at McDonald's, ate, and got to know each other. "Bobby" then asked Grohs what he wanted to do if they met. Grohs replied that it was up to "Bobby" and asked him if he wanted to get something to eat at McDonald's. "Bobby" then inquired whether his age bothered Grohs. Grohs responded that he liked "Bobby's" age. "Bobby" agreed to definitely meet the next day but remained curious about what they could do when they met. Grohs replied: "Whatever you want. If you want to have sex, that's okay with me. You don't want to, that's okay." Later in the conversation, "Bobby" asked where they could go to have sex. Grohs indicated that they could go to his apartment. "Bobby" again questioned Grohs about what he liked to do. Grohs responded: "I'm into anything, really. I'm open, I just like to have fun and enjoy myself. You know, I like pleasing whoever I'm with." "Bobby" next asked whether they would "do it to each other," Grohs indicated that was fine, and "Bobby" explained that most of his experience was with oral sex which he enjoyed. The conversation ended with "Bobby" asking whether Grohs would bring condoms, to which Grohs replied in the affirmative. Grohs and "Bobby" agreed to talk the next day to finalize their plans.
The second telephone conversation between Grohs and "Bobby" began with "Bobby" expressing his fear that when Grohs saw he was fifteen he would drive away. Grohs assured "Bobby" that he would not do that and that they were still going back to his apartment. "Bobby" asked what they would do when they got to the apartment, and Grohs responded "[w]hatever you want. Whatever you feel comfortable with, that's all." Grohs then told "Bobby" that "Bobby" would call the shots. "Bobby" continued to press Grohs about what they would do and what he liked to do. Grohs continued to indicate that they would not do anything with which "Bobby" was not comfortable and that it depended on how far "Bobby" wanted to go. "Bobby" then indicated that he was "pretty much up for everything" and confirmed that they could fool around and have sex at Grohs's apartment. "Bobby" again asked what type of sex acts Grohs liked to do, and Grohs replied that they would talk about it when they saw each other. Finally, "Bobby" confirmed that Grohs was bringing condoms. Grohs and "Bobby" agreed on the logistics of their meeting at a Shell station later that day. When Grohs arrived for that meeting, he was arrested on the charge for which he was convicted in this case.
During trial, the chat room transcript and e-mails were received into evidence and the recordings of the telephone calls were played for the jury. At the close of the State's evidence, Grohs moved for a *454 judgment of acquittal on the following basis:
We move for a judgment of acquittal based on the lack of any sexual solicitation in the communication.
There really is no seduction, solicitation, inducing, of the person posing as Bobby, by the defendant. In the chat room session or in any of the e-mails.
That's what he's charged with. He's not charged with soliciting on the telephone or in person or in any other way. He's charged, as I understand it, with using a computer to seduce, solicit, lure or entice a child, or a person he thinks to be a child, for the purpose of engaging in illicit sexual activities. The first prong is using the computer.
The trial court reserved ruling on the motion for judgment of acquittal.
While the jury was deliberating, it posed the following question to the trial court: "Does `utilizing' a computer online service mean one can use the contents of a cell phone call as evidence if the cell phone number was provided in an e-mail?" The trial court asked the authoring juror to clarify the inquiry, and the juror explained that the jury was seeking a clarification of its confusion regarding the "utilizing" element of section 847.0135(3). The trial court explained to counsel that it believed the jury's question to be the crux of Grohs's motion for judgment of acquittal and ruled that it would answer the question in the affirmative, thereby denying the motion for judgment of acquittal. In response, Grohs's counsel requested that the "statute should be stricken." He did not argue, as counsel does on appeal, that rather than answering the question, the trial court should have simply reminded the jury of its province regarding the evidence and factual determinations.
As a preliminary matter, a review of the trial transcript and a reading of Grohs's summary of the argument (not to mention other statements included in the briefs filed both by Grohs and the State) give the impression that Grohs's main argument on appeal would be that section 847.0135(3) does not encompass telephone conversations so that it was error to instruct the jury that it did and allow the jury to consider evidence related to the telephone conversations as proof of guilt. However, this is not the argument that Grohs makes in the argument section of his initial brief. As such, this Court is not being called upon to construe the statute and determine whether it is intended to criminalize any conduct occurring by telephone, so that in deciding this appeal we will not reach this issue not properly raised by Grohs. See Branch v. State, 790 So.2d 437, 439 (Fla. 1st DCA 2000) ("Finally, in the `Summary of Argument' section of his initial brief, the appellant contends that the Act violates double-jeopardy protections. However, absent any argument whatsoever or case law to support this conclusory position, we deem the appellant to have waived this ground to challenge the Act.").
In his initial brief, Grohs raises three issues for this court's consideration. The first two issues, addressing the jury's question and Grohs's motion for judgment of acquittal, will be addressed in this opinion.[1]
*455 The first issue raised by Grohs contends that the trial court invaded the province of the jury by answering the jury's question in a way that instructed the jury how to decide a factual issue. As for this issue, Grohs argues that the evidence did not establish that Grohs solicited "Bobby" by e-mail and that the trial court invaded the province of the jury by indicating that it could instead use the telephone conversations to convict Grohs for computer solicitation under section 847.0135(3). Grohs further contends that whether to consider evidence of the telephone conversations was a factual determination to be made by the jury. By answering the jury's question in the affirmative, Grohs argues that the trial court took the determination of an essential element away from the jury, thereby directing a verdict for the State. Grohs maintains that the trial court should not have answered the jury's question in the affirmative, but simply should have reminded the jury that it had all of the evidence before it necessary to make a decision.
The State responds that the trial court's answer to the jury's question was appropriate because the jury had been instructed to "look at all evidence admitted during trial to determine whether there was proof beyond a reasonable doubt of the defendant's guilt." In sum, the State maintains that the trial court did not instruct the jury how to decide a factual issue, but rather reminded the jury that it could decide a factual issue.
We conclude that the argument that is raised by Grohs in his initial brief regarding the jury's question, focusing on the trial court invading the province of the jury, is without merit. By answering the jury's question in the affirmative, the trial court made a legal determination regarding the scope and meaning of section 847.0135(3), and not a factual determination regarding whether there was evidence adduced that demonstrated a violation of the statute as Grohs contends. As such, it was not error for the trial court to answer the question in the affirmative and to not remind the jury of its function as finder of fact (which, in any event, was not a course of action suggested by Grohs below).
The second issue raised by Grohs asserts that the trial court erred by denying Grohs's motion for judgment of acquittal because the evidence presented at trial did not constitute solicitation sufficient for conviction under section 847.0135(3). As for this issue, Grohs contends that there was insufficient evidence to support a conviction for violating section 847.0135(3) because neither in the e-mails nor the telephone calls did Grohs, either explicitly or implicitly, ask or induce "Bobby" to engage in sex or mention sex, so that Grohs could not be said to have seduced "Bobby."
The State responds that the intent of section 847.0135(3) is not to render Grohs immune from prosecution "as long as he is not explicit with his intentions while online." Furthermore, the State emphasizes that the statute is not only violated by solicitation, but also by seduction, enticement, and allurement, and that the evidence presented at trial thereby supported a conviction for violating the statute.
The standard of review applicable to motions for judgment of acquittal is de novo. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002); Romero v. State, 901 So.2d 260, 264 (Fla. 4th DCA 2005). Regarding motions for judgment of acquittal, the Florida Supreme Court has written:

*456 A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge.
Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
On this issue, Grohs's argument suffers from the flaw of too narrowly reading section 847.0135(3) and focusing entirely on whether the evidence presented established that he solicited "Bobby." What Grohs overlooks is that he could also violate section 847.0135(3) by seducing, luring, or enticing "Bobby." These terms were not defined in the statute or a standard jury instruction, but in the absence of such definition, this Court looks to their plain and ordinary meaning, whether expressed in a dictionary or similar statutes. See L.B. v. State, 700 So.2d 370, 372 (Fla. 1997) ("[A] court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term."); Jones v. Williams Pawn & Gun, Inc., 800 So.2d 267, 270 (Fla. 4th DCA 2001) ("In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term, and where statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense.").
The terms seduce, solicit, lure, and entice are not elsewhere defined in statutes that are either similar or related to section 847.0135(3).[2] As such, we turn to a dictionary to ascertain the plain and ordinary meaning of these terms, a tactic suggested by Grohs by employing definitions from Black's Law Dictionary in a proposed jury instruction on the elements of section 847.0135(3) that was rejected by the trial court (although not raised as error on appeal). Seduce commonly means "to carry out the physical seduction of: entice to sexual intercourse." Merriam-Webster Online Dictionary, at http://www.m-w. com/ dictionary/seduce. Solicit ordinarily means "to entice or lure especially into evil" and "to proposition (someone) especially as or in the character of a prostitute." Id. at http://www.m-w.com/ dictionary/solicit. Lure generally means "to draw with a hint of pleasure or gain: attract actively and strongly." Id. at http:// www.m-w.com/ dictionary/lure. Finally, entice typically means "to attract artfully or adroitly or by arousing hope or desire: tempt." Id. at http://www.m-w.com/ dictionary/entice.
Whether to grant a motion for judgment of acquittal hinges on the sufficiency of the evidence presented at trial and what factual findings the jury could "fairly and reasonably infer" from that evidence. We conclude that it was not unreasonable for the trial court in this case to conclude that *457 the jury could "fairly and reasonably infer" that Grohs violated section 847.0135(3) by his comments, even if only those occurring online during the chat session and e-mail exchanges with "Bobby" are considered. Although a difference of opinion could exist regarding the connotations of statements made by Grohs in his online communications with "Bobby," such a difference of opinion is the very hallmark of a case that should be resolved by a jury rather than on a motion for judgment of acquittal.
We conclude that a jury could "fairly and reasonably infer" that various statements made by Grohs in his online communications with "Bobby" met the plain and ordinary definitions of seduce, solicit, lure, and entice, although only obliquely and implicitly by avoiding explicit references to sexual conduct. The tenor of Grohs's suggestive comments could be interpreted to demonstrate both the adroit artfulness, or enticement, and the enjoyment of active attraction, or allurement, of a predator laying a trap for his prey. The trap may have been set by phrases such as "we can be more, and do whatever makes you happy" and "I'd be happy to do anything with and/or for you right now." When taken in the context of being directed at a believed fifteen-year-old boy first contacted in a "Young Men" chat room, these phrases could reasonably be construed as aimed at physical seduction to sexual intercourse and the propositioning of sexual conduct. Consequently, we conclude that the trial court did not err by denying Grohs's motion for judgment of acquittal and allowing the jury to exercise its fact-finding role to "fairly and reasonably infer" conclusions from sufficient evidence regarding conduct that presented "room for a difference of opinion between reasonable men."
In sum, we conclude that the trial court did not err by answering the jury's question in the affirmative or by denying the motion for judgment of acquittal. Grohs failed to effectively challenge the legal determination reflected in the trial court's answer to the jury's question, and the evidence otherwise can be reasonably construed to support a conviction for violating section 847.0135(3). Therefore, Grohs's conviction and sentence are affirmed.
Affirmed.
GUNTHER, FARMER and TAYLOR, JJ., concur.
NOTES
[1] The third issue addresses whether Grohs was charged with a "double inchoate offense" under section 847.0135(3). We reject Grohs's argument on this point because he was not charged with the separate inchoate offense of criminal solicitation under Florida Statutes section 777.04(2). Additionally, there is no indication that section 777.04(2) has any bearing on the definition of "solicit" in section 847.0135(3), especially where criminal solicitation prohibits conduct focused on having another commit a crime in one's stead while section 847.0135(3) criminalizes soliciting a minor to enable an individual to himself commit a crime of sexual battery, lewdness, or child abuse. As such, we affirm as to Grohs's third issue without further comment.
[2] "Solicit" is defined in the Florida Standard Jury Instructions in Criminal Cases in relation to the inchoate offense of criminal solicitation, see Fla. Std. Jury Instr. (Crim.) 5.2, but for the reasons explained in footnote 1, we reject the applicability of this definition to section 847.0135(3).