396 So.2d 771 (1981)
Lee W. PROCTOR, Appellant,
v.
CITY OF CORAL SPRINGS, Appellee.
No. 79-1582.
District Court of Appeal of Florida, Fourth District.
March 25, 1981.
Gaylord A. Wood, Jr., Fort Lauderdale, for appellant.
Paul J. McDonough, P.A., Coral Springs, for appellee.
GLICKSTEIN, Judge.
Section 18-5 of the City of Coral Springs, Florida, Code of Ordinances prohibited the owner or person having the use of a "commercial vehicle" from parking the vehicle for any period of time between 9:00 p.m. and 6:00 a.m., or for any period of time on Sunday, on a public right-of-way adjacent to or on private property zoned "R" or "D" unless parked in a covered garage or carport. The definition of "commercial vehicles" was based upon the State of Florida Vehicle Tax Class Codes and descriptive classifications.
On January 15, 1977, Lee Proctor owned a 3/4-ton pickup truck, which was classified as a commercial vehicle under the ordinance. While visiting friends in Coral Springs on that date, Mr. Proctor, parked his pickup truck in the friends' front yard. At 11:00 p.m. he was issued a citation, charging him with violation of the ordinance. The testimony was undisputed that the pickup truck had no commercial marking and that it was not used for commercial purposes.
A zoning ordinance will be upheld unless it is clearly shown that it has no *772 foundation in reason and is a mere arbitrary exercise of power without reference to public health, morals, safety or welfare. City of Coral Gables v. Wood, 305 So.2d 261, 263 (Fla. 3d DCA 1974). Zoning measures designed to enhance the aesthetic appeal of a community have been recognized as a valid exercise of the police power. See e.g. Merritt v. Peters, 65 So.2d 861 (Fla. 1953); City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941); City of Coral Gables v. Wood, supra. In City of Coral Gables v. Wood, supra, the court held that a zoning ordinance aimed at preventing the unsightly appearances and diminution of property values that occurred when camper-type vehicles were parked or stored out of doors in residential areas of a community, was not arbitrary or unreasonable. Storage of the vehicles was permitted within a garage or other structure, and therefore the ordinance did not unconstitutionally deprive the owners of a right to have camper-type vehicles. More akin to the instant case was Henley v. City of Cape Coral, 292 So.2d 410 (Fla. 2d DCA 1974), where an ordinance intended to protect residential neighborhoods against the lingering presence of commercial vehicles was held not to be overbroad or unreasonable, particularly since the commercial vehicles could be garaged at residences. However, the court anticipated a situation such as the one sub judice and said "this ordinance may be unconstitutionally applied as for example to a station wagon which gives no outward sign of being used in business." Id. at 411.
Notwithstanding the general propositions of law recited above, we hold that the subject ordinance is unreasonable and unconstitutional as applied to pickup trucks. It restricts drivers of pickup trucks from visiting with friends or family by making it illegal to be parked in a residential driveway, or on the hosts' lawn, or in the street in front of the home after 9:00 p.m. even though the vehicle in question is not truly a commercial vehicle; i.e., without commercial markings of any nature and not used for commercial purposes.
Accordingly, we reverse and remand for proceedings consistent with this opinion.
REVERSED and REMANDED.
HURLEY, J., concurs specially with opinion.
MOORE, J., dissents with opinion.
HURLEY, Judge, concurring.
I join in the opinion of the court for in my view, the ordinance, as presently drawn, constitutes an impermissible infringement upon a citizen's freedom of association which I consider to be an inalienable right guaranteed to the citizens of Florida by Article 1, Sections 2, 4, 5 and 23 of the Florida Constitution.
Over a century ago, Alexis de Toqueville observed that the "most natural privilege of man, next to the right of acting for himself, is that of combining his exertions with those of his fellow creatures and of acting in common with them."[1] It was for this reason that he thought "the right of association ... almost as inalienable in its nature as the right of personal liberty."[2] Today it is well recognized that both the federal and state constitutions guarantee freedom of association. Indeed, the United States Supreme Court has repeatedly described this right as among the preferred rights derived by implication from the First Amendment's guarantees of speech, press, petition and assembly.[3] Though most of the cases treat freedom of association as ancillary to other rights protected by the First Amendment, it is agreed that "it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters... ." NAACP v. Alabama *773 ex rel. Patterson, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).
In addition to its roots in the First Amendment and in Article 1, Sections 4 and 5 of the Florida Constitution, I believe that freedom of association is also an inseparable aspect of an individual's rights of privacy and personhood. The decision to join with others in pursuit of a lawful common goal or simply to enjoy each other's company is a fundamental aspect of individual liberty. It is deep within our traditions, and "[t]he right of association, the right to invite the stranger into one's home is... basic in our constitutional regime... ."[4] Thus, I suggest that the time has come to enunciate clearly that freedom of association is one of the inalienable rights guaranteed to the citizens of Florida by Article 1, Sections 2 and 23 of the Florida Constitution. The import of the constitutional right of association is that "whatever action a person can [lawfully] pursue as an individual, freedom of association must ensure he can pursue with others."[5] So obvious is this right that it has largely been taken for granted, but the case at bar illustrates the need for explication; also, it is a particularly apt example of how rights of association, privacy and personhood are often inextricably entwined.
In an effort to regulate parking or storage of commercial or recreational vehicles, the City of Coral Springs enacted an ordinance which prohibits "commercial vehicles" from being parked on the side of the roadway, or on private property "for any period of time between 9:00 p.m. and 6:00 a.m." during the week, "or for any period of time on Sunday." The ordinance defines "commercial vehicles" to include all pickup trucks, irrespective of size or use. Furthermore, it subjects both the vehicle owner and the homeowner to possible criminal penalties. In a suburban community like Coral Springs, where transportation is a necessary incident to association, the inescapable effect of the ordinance is to substantially inhibit free association. It limits an individual's ability to visit friends in the privacy of their home if the visitor must utilize a pickup truck for transportation. This is not far-fetched conjecture; it is precisely what occurred in the case at bar. Appellant, Lee Proctor, drives a 1974 Cheyenne Chevrolet pickup truck for every-day transportation. The vehicle bears no commercial designations, yet on January 15, 1977, at approximately 11:00 p.m., Proctor received a ticket while visiting at the Coral Springs home of Bob and Margaret Withrow. The record is not clear whether Proctor's pickup was parked on the Withrows' property or on the side of the roadway in front of their home. The violative conduct, however, was that the truck was parked, ungaraged, within a residential area of the City of Coral Springs after 9:00 p.m. Appellant's vehicle was ticketed on two subsequent occasions during August of 1977 when his wife utilized the vehicle to visit her mother who resided within the City of Coral Springs.
From the beginnings of our constitutional history, we have exhibited a special sensitivity for the privacy of the homeplace. The Third and Fourth Amendments to the United States Constitution, for example, reflect that solicitude for freedom and privacy of one's home was one of the most vital elements of English and colonial liberty. More importantly, that concern has continued unabated. In 1969, for example, the United States Supreme Court, in deciding a case with First Amendment implications, declared the privacy of the homeplace to be virtually sacrosanct. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). See also, Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Similarly, our state courts have held that the right of privacy "includes the right to be free from unreasonable restrictions on the use of the residence." Foss v. Foss, 392 So.2d 606, 607 (Fla. 3d DCA 1981). Indeed, Florida's commitment to the protection of privacy was underscored on November *774 4, 1980, when our citizenry took the momentous step of amending the state constitution to include an express guarantee to the right of privacy.[6] Given this unswerving tradition, it is not surprising that the courts have crafted demanding standards to safeguard this essential liberty. In NAACP v. Alabama ex rel. Patterson, supra, Mr. Justice Harlan noted that "state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." 357 U.S. at 460-61, 78 S.Ct. at 1170-1171.
Subjecting the Coral Springs ordinance to the closest scrutiny only heightens its arbitrary character. There is not the slightest suggestion in the record that such an all-inclusive enactment is necessary to meet the city's legitimate responsibility of protecting the public health, safety or welfare. The ordinance does not speak in terms of weight, width or other relevant concerns, but merely contains a blanket prohibition of all pickup trucks. This is demonstrably excessive. It is common knowledge that a sizeable number of citizens, in addition to appellant, utilize pickup trucks for their normal mode of transportation. Many of these vehicles are no longer, wider or heavier than a standard American-made automobile. To ban such vehicles in the name of aesthetics smacks of the rankest form of elitism, and more significantly, fails to give due consideration to the associational rights of homeowners and visitors alike. In my view, the ordinance is so overbroad as to be constitutionally intolerable. Accordingly, I join in the opinion of the court.
MOORE, Judge, dissenting:
In dissenting from the majority's conclusion, I find myself in complete agreement with the principles of law cited by Judge Glickstein. Unfortunately, Judge Glickstein then holds that these principles render a parking ordinance unconstitutional when applied to pick-up trucks, without any more reasoning than to say simply that the ordinance is "unreasonable." I fail to see the unreasonableness.
I also fail to see how a violation of this relatively clear and simple parking ordinance rises to the level of such constitutional proportions as suggested by Judge Hurley.
The appellant sought a declaration in the trial court that the ordinance was unconstitutional as applied to him. After a non-jury trial final judgment was entered against appellant by the able trial judge. I would affirm that judgment on the authority of City of Coral Gables v. Wood, 305 So.2d 261 (Fla. 3rd DCA 1974) and Henley v. City of Cape Coral, 292 So.2d 410 (Fla. 2nd DCA 1974).
Moreover, we should not substitute our judgment for that of local government absent a clear constitutional violation which is not present here. The final judgment should be affirmed.
NOTES
[1] A. de Toqueville, Democracy in America, 196 (P. Bradley, ed. 1945).
[2] Id.
[3] See e.g., Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).
[4] United States Department of Agriculture v. Moreno, 413 U.S. 528, 543, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973) (Douglas, J., concurring).
[5] Raggi, "An Independent Right to Freedom of Association," 12 Harv.Civ.Rts.  Civ.Lib.L.Rev. 1, 15 (1977).
[6] The amendment creates Section 23 of Article I of the Florida Constitution and provides that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law."