CORTINAS, Judge
(dissenting).
The en-banc majority overturns the original panel opinion by employing a rational basis test that appears to be patterned after the proverbial rubber stamp. The inevitable conclusion drawn from its opinion is that virtually any government action done under the guise of protecting the public health, safety, and welfare enjoys judicial immunity under its constrained version of the rational basis test. Respectfully, that is simply not the law. Under a rational basis review for constitutionality of a classification, the United States Supreme Court has held that the government “may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational.” City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); see Zobel v. Williams, 457 U.S. 55, 61-63, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982); United States Dep’t of Agric. v. Moreno, 413 U.S. 528, 535, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).
The precise issue in this case is whether the Coral Gables ordinances before us, as applied to Mr. Kuvin’s Ford F-150 vehicle, are constitutional. We reject Mr. Kuvin’s claim that the ordinances are facially unconstitutional since we readily envision nu *853 merous applications of the ordinances, such as when dealing with a cement truck or a dump truck, that would render them constitutional. Thus, on the grounds raised by appellant, the ordinances are facially constitutional. See Cashatt v. State, 873 So.2d 430, 434 (Fla. 1st DCA 2004) (holding that a facial challenge to a statute is more difficult than an “as applied” challenge because the challenger must establish that no set of circumstances exists under which the statute would be valid). Accordingly, we are left with only an as-applied constitutional challenge that examines the application of the Coral Gables ordinances vis-á-vis an F-150 vehicle. It is here where the ordinances simply bear no rational relationship to the city’s legitimate responsibility of protecting the public health, safety, and welfare.
As-Applied Constitutional Review

A.The Ford F-150.

We begin by examining the type of vehicle involved in this case. For the past twenty-eight years in a row, the Ford F-150 has been the best-selling vehicle in the United States. See Ford F-Series: Best Selling Truck 33 Years Running, http:// www.fordinthenews.com /ford-f-series-best-selling-truck-33-yearsrunning/; Ed-munds Ford F-150 Overview, www. edmunds.com/ford/fl50/2010/review.html. This particular vehicle is so popular that one is likely to see it during any routine drive in virtually any city in America. It is also common knowledge that many citizens, just like Mr. Kuvin, choose to drive a light truck as their personal mode of transportation. Moreover, the dimensions of a Ford F-150 (211.2 inches x 78.9 inches x 73.7 inches) are comparable to those of a Ford Crown Victoria (212 inches x 77.3 inches x 58.3 inches) and a Lincoln Town Car (215.4 inches x 78.5 inches x 59 inches). In fact, the Ford F-150 is smaller than many SUVs. Because its payload capacity is less than 4,000 pounds, the Ford F-150 is considered a light truck. Wikipedia, Light Truck, http://en. wikipedia.org/wiki/Light_duty_truck (Light truck or light duty truck is a classification for trucks or truck-based vehicles with a payload capacity of less than 4,000 pounds.).
B. The Personal Use of Appellant's Vehicle.
Next, we consider the fact that this case involves Mr. Kuvin’s personal-use vehicle. There is no record evidence of any commercial markings or commercial use whatsoever. Similarly, there is also no evidence that Mr. Kuvin’s F-150 was carrying any cargo at the time of the offense. Mr. Kuvin simply possessed an F-150 for his personal use and was cited for parking it overnight in his driveway.
C. The Coral Gables Ordinances.
Section 8-11 of the City of Coral Gables’ Zoning Code provides, in pertinent part, as follows:
Sec. 8-11 — Parking in residential areas.
(a) It shall be unlawful for any person to park any vehicle displaying advertising signs or any truck, trailer, commercial vehicle, or recreational vehicle, in or upon any property, public or private, in any area of the city which is zoned residential.
Coral Gables, Fla., Zoning Code § 8-ll(a) (emphasis added).
Section 8-12 of the Coral Gables Zoning Code provides:
Sec. 8-12 — Trucks, trailers, commercial vehicles, and recreational vehicles — Parking upon streets and public places.
Except as provided for herein no trucks, trailers, commercial vehicles, or *854 recreational vehicles, shall be parked upon the streets or other public places of the City between the hours of 7:00 p.m. on one day and 7:00 a.m. of the next day. This prohibition is in addition to the total prohibition covering residential areas dealt with in Section 8-11 hereof.
Coral Gables, Fla., Zoning Code § 8-12 (emphasis added).
These ordinances do not contain any limitations whatsoever concerning the weight or dimensions of trucks being prohibited from driveways or public areas. In addition, the definition of “truck” under the ordinances is so broad that it encompasses every single SUV,[2] station wagon, and vehicle with a cargo space, no matter how small. See Coral Gables, Fla., Zoning Code § 2-128.
Under the Coral Gables Zoning Code, a “truck” is defined as:
any motor vehicle designed, used or maintained for transporting or delivering property or material used in trade or commerce in general. Trucks shall include any motor vehicle having space designed for and capable of carrying property, cargo, or bulk material and which space is not occupied by passenger seating.
Coral Gables, Fla., Zoning Code art. 8 (2010) (formerly Coral Gables, Fla., Zoning Code § 2-128) (emphasis added).
Under the City’s broad definition, every single SUV or station wagon is a “truck” as it has space designed for and capable of carrying property or cargo and which space is not occupied by passenger seating. Even a car or minivan that has a folding rear seat row becomes a “truck” under such a broad and arcane definition. Per-plexingly, the existence of an ordinary trunk could metamorphosize a car in Miami or Tallahassee into a “truck” in Coral Gables. While, at the time of its enactment more than three decades ago, such a definition of “truck” might have made some sense and might have been rationally related to aesthetics as applied to then-existing vehicles, that is clearly no longer the case in 2010. The obvious and dramatic changes in vehicle design from the 1970s to the present make it evident that “we’re not in Kansas anymore.”
In stark contrast to the Coral Gables ordinances, other municipalities have imposed weight and dimension limitations on their ordinances regulating trucks. See, e.g., Vill. of N. Aurora v. Anker, 357 Ill.App.3d 1049, 294 Ill.Dec. 470, 830 N.E.2d 882 (2005) (involving ordinance wherein a truck the length of defendant’s, when driven on a non-designated highway, may weigh no more than 73,280 pounds); City of Madison v. Crossfield, 671 N.W.2d 717 (Wis.Ct.App.2003) (involving residential area zoning restriction allowing the parking of passenger automobiles, passenger trucks and bicycles, provided they are of less than one ton in “capacity”); City Of Mentor v. Brettrager, No. 2000-L-150, 2002 WL 603055 (Ohio Ct.App. April 19, 2002) (involving ordinance which prohibited vehicles weighing in excess of 5,050 lbs. from parking in appellant’s neighborhood).
As applied to this particular case, the city ordinances prohibit any truck, including a personal-use light truck, from being parked in the private driveway of a Coral Gables residence. Similarly, all trucks, including the Ford F-150 vehicle, are prohibited by ordinance from being parked in a Coral Gables metered-parking space or other public area of the City during the *855 evening and overnight hours. Thus, under the subject ordinances, anyone wishing to dine in Coral Gables may not park a personal-use light truck in any public area of the City or any residential driveway.
D. The Only Reported Case Directly on Point: A Red Cow Case.
There is only one reported case in the entire country that involves the application of a similar ordinance to a personal-use light truck. See City of Nichols Hills v. Richardson, 939 P.2d 17 (Okla.Crim.App. 1997). City of Nichols Hills is a “red cow” case,[3] which addressed the precise vehicle and issue before us and struck down a virtually identical regulation as not rationally related to aesthetics. Id. Nichols Hills is an affluent neighborhood, similar to Coral Gables, near Oklahoma City. In City of Nichols Hills, the appellant was cited for violating a city ordinance by parking her pickup truck in the driveway of her Nichols Hills home between the hours of 2:00 a.m. and 5:00 a.m. Id. at 17-18. There, the City argued “(a) that ‘aesthetics’ is one of the primary reasons the ordinance was enacted and (b) that the prohibition against pickups ‘directly relates to the City’s interest in controlling land use and maintaining land values.’ ” Id. at 19. The Oklahoma Court of Criminal Appeals held that, as applied to that appellant and all pickup trucks, the ordinance was unreasonable and overbroad. Id. at 20.
E. Personal-use Vehicles v. Commercial and Recreational Vehicles.
While commercial and recreational vehicles have been the subjects of judieially-upheld regulations based on aesthetic considerations, personal-use vehicles have not.
Commercial vehicles include tow trucks, dump trucks, and buses, among others, while recreational vehicles may include trailers, campers, motor homes, and boats, among others. Courts have upheld municipal ordinances prohibiting the outside parking or storage of commercial and recreational vehicles in residential areas. See, e.g., City of Coral Gables v. Wood, 305 So.2d 261, 263 (Fla. 3d DCA 1974) (upholding zoning ordinance prohibiting campers, trailers, and other vehicles “designed and adaptable for human habitation” on public and private property within the City of Coral Gables as applied to a resident who parked an Apache vehicle in his backyard in a residential area); City of Blue Springs v. Gregory, 764 S.W.2d 101 (Mo.Ct.App.1988) (upholding ordinance prohibiting the parking or storing of commercial vehicles over six tons in residential areas except while making deliveries). While some trucks, especially those with large dimensions and payloads, may be considered commercial vehicles, no case has ever held trucks of every kind to be commercial vehicles per se.
In Wood, this court upheld a different Coral Gables ordinance affecting campers, which restricted the parking of an Apache camper on public and private areas of the city. Wood, 305 So.2d 261. The Apache camper is not a self-propelled vehicle as it must be towed and cannot be driven by itself. Moreover, the height, width, and length of an Apache camper are also greater than those of any personal-use vehicle. In Wood, we stated:
[T]he Coral Gables [Camper] ordinance is aimed at preventing unsightly appear- *856 anees and diminution of property values which obtain when camper-type vehicles are parked or stored out of doors in a residential area of the community.
Id. at 263. We went on to hold that the owner of the Apache camper “was only restricted from indulging in a use that would impinge upon the rights of other property owners.” Id. at 264. For these reasons, Wood correctly recognized that municipalities may properly regulate campers under their police powers aimed at aesthetics. The same simply cannot be said with respect to an F-150. It would be ludicrous to suggest that the parking of an F-150 in a driveway or public area of a municipality is “indulging” in a use that impinges upon the property rights of others.
Personal-use vehicles include cars, station wagons, minivans, sport-utility vehicles (“SUVs”), and light trucks. Record evidence shows that the category of light trucks may encompass pickup trucks, minivans, and SUVs, many of which are smaller in length than some full-size cars. In sharp contrast to cases involving commercial and recreational vehicles, no case has ever upheld an as-applied constitutional challenge to a regulation banning a personal-use vehicle. As noted earlier, this precise issue was addressed in City of Nichols Hills, where the court struck down the regulation, as applied to a pickup truck, as not rationally related to aesthetics. Id.
F. The Majority’s Flawed Reasoning. 1. Cases Decided on Facial Constitutional Review Are Inapposite.
In order to support its holding, the majority attempts to draw parallels to cases involving a facial constitutional challenge to similar ordinances. See Henley v. City of Cape Coral, 292 So.2d 410, 411 (Fla. 2d DCA 1974). This is simply a red herring. In fact, the majority’s bold claim that Henley is “indistinguishable” from this case is belied by the obvious and glaring distinction that Henley only considered a facial constitutional claim. In contrast, the original panel opinion and this dissent are squarely grounded on the unconstitutional nature of the Coral Gables ordinances as applied to Mr. Kuvin’s F-150 vehicle. The fact that the ordinances may survive a facial constitutional challenge has nothing to do with this case.
In Henley, the Second District, confronted solely with a facial challenge, upheld a municipal ordinance which prohibited trucks of any kind from being parked overnight in all residentially-zoned areas regardless of whether the truck was being used for commercial or personal purposes. Id. Importantly, the Henley court was not presented with an as-applied challenge to the ordinance. Id. Instead, the court considered only the facial constitutionality of an ordinance and found it to be “on the whole reasonable.” Id. Nevertheless, most significant to our case, the Second District acknowledged that, if confronted with an as-applied challenge, such an ordinance “may be unconstitutionally applied as for example to a station wagon which gives no outward appearance of being used in business.” Id. (emphasis added).

Majority Expressly and Directly Conflicts with the Fourth District.

The majority’s opinion is in express and direct conflict with the Fourth District’s opinion in Proctor v. City of Coral Springs, 396 So.2d 771, 774 (Fla. 4th DCA 1981). City of Coral Springs, like the case before us, dealt with the type of situation foreseen in Henley: a municipal ordinance that, as applied, prohibited the parking of a personal-use vehicle on residential property. City of Coral Springs, 396 So.2d *857 771-74. The Coral Springs ordinance prohibited “commercial vehicles” only, while the Coral Gables ordinance’s prohibition encompasses “trucks, trailers, commercial vehicles, [and] recreational vehicles.” Mr. Proctor’s vehicle was a personal-use pickup truck without commercial markings, like Mr. Kuvin’s, which qualified as a “commercial vehicle” because it weighed three-quarters of a ton. Id. at 771. The Fourth District held that the subject ordinance was unreasonable and unconstitutional as applied to pickup trucks. Id. at 772. The court found that the ordinance “restricts drivers of pickup trucks from visiting with friends or family by making it illegal to be parked in a residential driveway, or on the hosts’ lawn, or in the street in front of the home after 9:00 p.m. even though the vehicle in question is not truly a commercial vehicle....”[4] Id. The Fourth District’s as-applied review in City of Coral Springs would allow Mr. Kuvin to park his F-150 in his driveway if he lived in Coral Springs.[5] Unfortunately, the Third District’s majority opinion denies Kuvin’s as-applied challenge as it pertains to the parking of his personal-use pickup in Coral Gables and, as such, expressly and directly conflicts with the Fourth District’s holding.
We note that, in City of Nichols Hills, the Oklahoma court expressly agreed with the Fourth District’s holding in City of Coral Springs, stating:
Here, as in Proctor v. City of Coral Springs, 396 So.2d 771, 774 (Fla.App.1981), nothing in the record suggests that such an all-inclusive ordinance is necessary to meet the city’s legitimate responsibility of protecting the public health, safety or general welfare of its citizens. Ordinance No. 700, as in City of Coral Springs, “does not speak in terms of weight, width or other relevant concerns, but merely contains a blanket prohibition of all pickup trucks”. Id.
Any vehicle that meets the definition of a “private passenger vehicle”-no matter how ugly, rusted or offensive, may be parked in this municipality between the hours of 2:00 a.m. and 5:00 a.m. However, not a single pickup-no matter how new, expensive, or “pleasing to the eye”, may be parked in any driveway during these hours. The obvious contradiction belies the City’s claim that it has enacted the ordinance to protect the aesthetic integrity of the community.
City of Nichols Hills, 939 P.2d at 19-20.
We agree with the holding and reasoning of the Fourth District in City of Coral Springs as well as the Oklahoma court in City of Nichols Hills.
3. The “Look” of an F-150 Does Not Make It Commercial.
The majority also makes references to the “look” of Mr. Kuvin’s F-150 to somehow suggest that this “look” supports its holding. The majority knows that this case does not involve the regulation of a commercial-use vehicle, yet it seizes upon the “look” in an effort to make it commercial. It is like painting lines on a horse to make it “look” like a zebra; it does not make it so. For purposes of constitutional *858 review, the “look” of Mr. Kuvin’s F-150 vehicle is wholly irrelevant. No case, until now, has ever suggested that a personal-use light truck, based on its looks, is a commercial vehicle as a matter of law. Instead, the relevant inquiry for courts is the type of vehicle involved and its actual use.
Governments may not use their police powers to regulate the “look” of their citizens’ personal-use vehicles. They cannot forbid purple cars any more than a particular brand or category of personal-use vehicle. These areas are simply out of reach of governmental regulation aimed at aesthetics. The majority would allow governments to regulate the types of personal-use vehicles their citizens drive simply based on their outward appearance. Such a holding embraces George Orwell’s dysto-pia, where personal rights are subverted by the government.
Truth be told, the author of this opinion does not particularly like trucks, including the Ford F-150. He would not want to own one and does not like driving alongside or behind one. He finds the F-150 to be bulky the same way some minivans and SUVs are bulky. However, a judge must put aside his or her personal likes and dislikes and apply the law equally and fairly. Although a judge may not like trucks of any kind, he or she must recognize that there are many people who think differently. Indeed, the F-150 is the personal-use vehicle of choice for millions of Americans, including some residents of Coral Gables.
A distinguished former appellate and present federal judge, Daniel T.K. Hurley, who wrote a concurring opinion in City of Coral Springs, aptly termed ordinances such as these as elitist. In examining a similar ordinance, Judge Hurley remarked:
The ordinance does not speak in terms of weight, width or other relevant concerns, but merely contains a blanket prohibition of all pickup trucks. This is demonstrably excessive. It is common knowledge that a sizeable number of citizens, in addition to appellant, utilize pickup trucks for their normal mode of transportation. Many of these vehicles are no longer, wider or heavier than a standard American-made automobile. To ban such vehicles in the name of aesthetics smacks of the rankest form of elitism....
Id. at 774.
While affording all appropriate presumptions in favor of the constitutionality of the city ordinances at issue, as applied to appellant’s Ford F-150, these ordinances bear no rational relationship whatsoever to aesthetics. City of Nichols Hills, Henley, and City of Coral Springs stand for the proposition that, as applied to a personal-use light truck, a municipality may not exercise its police powers to regulate the parking of such a vehicle based on aesthetic considerations. There is nothing to indicate that property values may be affected by the mere presence of a light truck in a private driveway or public parking space. Without more, there is simply no rational relationship between the parking of a personal-use Ford F-150 in a residential neighborhood or on a public street and aesthetics. That is the case in Coral Gables, as it is in Coral Springs, Nichols Hills, and in every other town in America.
SALTER, J. concurs.

. The City acknowledges that it does not enforce these ordinances against owners of SUVs or station wagons. As we explain later in this dissent, this selective enforcement highlights the not-so-subde elitism underlying the ordinances and their enforcement.

. The term "red cow” is used in Florida to describe a case that is directly on point, that is, a case that not only involves the same animal but also the same color. See Cornm v. City of Lauderdale Lakes, 997 F.2d 1369 (11th Cir.1993); United States v. Kopituk, 690 F.2d 1289, 1308 (11th Cir.1982); Stark v. Vasquez, 168 So.2d 140 (Fla.1964).

. Our case is even more compelling than City of Coral Springs since there is no dispute that Kuvin's Ford F-150 is a personal-use vehicle with no commercial markings and does not remotely qualify as a commercial vehicle.

. As in City of Coral Springs, Kuvin claimed that the ordinances prevented him from visiting his friends and, thus, violated his First Amendment rights, including the right of association. We do not reach this claim as we find that the ordinances bear no rational relationship to the city's legitimate responsibility of protecting the public health, safety, and welfare.