62 So.3d 625 (2010)
Lowell Joseph KUVIN, Appellant,
v.
CITY OF CORAL GABLES, Appellee.
No. 3D05-2845.
District Court of Appeal of Florida, Third District.
August 25, 2010.
*628 Lowell Joseph Kuvin, in proper person.
Ricci-Leopold and Spencer T. Kuvin, Palm Beach Gardens, for appellant.
Akerman Senterfitt and Michael Fertig and Jennifer Cohen Glasser, Miami; Robert S. Glazier, Miami; and Elizabeth M. Hernandez, City Attorney, Coral Gables, for appellee.
Before GERSTEN, WELLS, SHEPHERD, SUAREZ, CORTIÑAS, ROTHENBERG, LAGOA and SALTER, JJ.

ON MOTION FOR REHEARING EN BANC
ROTHENBERG, J.
Upon our rehearing en banc of this cause, we withdraw the prior panel opinion issued on August 22, 2007, and the subsequent revised dissent, and substitute the following opinion in its stead.
Lowell Joseph Kuvin ("Kuvin") appeals the trial court's order denying his motion for summary judgment, granting the City of Coral Gables' ("the City") motion for summary judgment, and issuing a final declaratory judgment in favor of the City. Upon en banc review, we affirm the trial court's order upholding sections 8-11 and 8-12 of the City's zoning code ("Zoning Code") as a valid, and thus constitutional, exercise of the City's zoning power.
The facts are not in dispute. Kuvin lived in the City in a rental home that did not have a garage. While residing in the City, Kuvin owned and drove a Ford F-150 pickup truck, which he routinely parked on the street in front of his home. After several warnings, Kuvin was issued a citation alleging a violation of the City's Zoning Code. After conducting a hearing, the City's Building and Zoning Board ("Board") found Kuvin guilty of the violation and fined him $50 plus costs.
Kuvin appealed the Board's decision by filing a complaint in the circuit court. In his complaint, Kuvin sought a declaration that sections 8-11 and 8-12 of the City's Zoning Code were unconstitutional. Section 8-11 prohibits the parking of trucks in residential areas of the City unless parked in an enclosed garage. Section 8-12, the zoning ordinance Kuvin was cited for violating, prohibits the parking of trucks, trailers, and commercial and recreational vehicles upon the streets or other public places in the City between the hours of 7:00 p.m. and 7:00 a.m. of the following day.
Kuvin eventually moved for summary judgment asserting that: (1) sections 8-11 and 8-12 of the City's Zoning Code violated his right of freedom of association; and (2) sections 8-11 and 8-12 of the City's Zoning Code are unconstitutionally vague, arbitrary, capricious, and selectively enforced as applied to pickup trucks. The *629 City filed a cross-motion for summary judgment. The trial court granted the City's motion and entered a final declaratory judgment in favor of the City.
Kuvin argues on appeal that sections 8-11 and 8-12 of the City's Zoning Code infringe on his fundamental First Amendment right of freedom of association. He therefore contends that the trial court erred in failing to apply a strict scrutiny analysis in determining the constitutionality of the ordinances. Kuvin additionally contends that these zoning ordinances are unconstitutionally vague and unreasonable as applied to pickup trucks. We conclude that the trial court: (1) applied the correct standard of review as the prohibited conduct does not infringe on a fundamental right; and (2) correctly found that the City's zoning ordinances are a valid exercise of the City's police power. We also find that Kuvin's due process argument is without merit.

THE TRIAL COURT APPLIED THE CORRECT STANDARD OF REVIEW
Constitutional challenges to statutes or ordinances involve pure questions of law reviewable on appeal de novo. Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm'n, 838 So.2d 492, 500 (Fla.2003); see also State v. Hanna, 901 So.2d 201, 204 (Fla. 5th DCA 2005) ("The interpretation of a statute or an ordinance is a purely legal matter and is subject to de novo review."). Because Kuvin challenges the constitutionality of municipal zoning ordinances, the scope of our review is dependent on the rights that Kuvin alleges are implicated. As Justice Cantero aptly noted in his dissent in State v. J.P., 907 So.2d 1101, 1120 (Fla.2004): "The first issue in every case considering the constitutionality of a statute or ordinance is which standard applies. Not only is the applicable standard the threshold determination in any constitutional analysis; it is often the most crucial. In this case, it has made all the difference."
Kuvin contends that sections 8-11 and 8-12 of the City's Zoning Code are subject to a strict scrutiny standard of review because they infringe on a constitutionally protected fundamental right. We agree with Kuvin that, if a fundamental right or suspect class is involved, a strict scrutiny standard of review is required, and the ordinances may only be upheld if they are strictly tailored to serve a compelling state interest. See J.P., 907 So.2d at 1110 ("To withstand strict scrutiny, a law must be necessary to promote a compelling governmental interest and must be narrowly tailored to advance that interest."). However, unless the ordinances involve a suspect class or impinge on a constitutionally protected right, they need only bear a rational relationship to a legitimate state purpose. City of Dallas v. Stanglin, 490 U.S. 19, 23, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). Because the City's zoning ordinances do not involve a suspect class or impinge on a fundamental right, the trial court correctly applied the "rational relationship" standard of review.

THE ORDINANCES DO NOT IMPINGE UPON A FUNDAMENTAL RIGHT
Kuvin does not assert that he is, nor is he, a member of a suspect class. Rather, he asserts that he is an owner of a personal-use pickup truck and that the ordinances impinge on his fundamental right of freedom of association. This argument is without merit.
Although the Constitution does not explicitly use the term "association," the right of association is derived by implication from the First Amendment's guarantees of speech, press, petition, and assembly. *630 Proctor v. City of Coral Springs, 396 So.2d 771, 772 (Fla. 4th DCA 1981) (Hurley, J., concurring). The two types of freedom of association recognized by the United States Supreme Court as protected by the Constitution are: (1) the right of association to enter into and to maintain certain intimate human relationships; and (2) the right to associate for the purpose of engaging in those expressive activities protected by the First Amendment. Stanglin, 490 U.S. at 24, 109 S.Ct. 1591; Roberts v. U.S. Jaycees, 468 U.S. 609, 617, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Because each is different, they will be addressed separately.

A. Intimate Relationships

The Supreme Court has not marked the precise boundaries necessary to meet the "intimate relationship" protection. Courts, however, have accorded constitutional protection to marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives. Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 546, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1051 (5th Cir.1996). Although the Supreme Court has not held that "constitutional protection is restricted to relationships among family members," it has "emphasized that the First Amendment protects those relationships... that presuppose `deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" Duarte, 481 U.S. at 545, 107 S.Ct. 1940 (quoting Roberts, 468 U.S. at 619-20, 104 S.Ct. 3244).
Kuvin received a citation for parking his open-bed pickup truck in front of his residence at night.[1] Kuvin does not allege, nor does the record demonstrate, that the City's ordinances restricting the overnight parking of trucks, except in enclosed garages, interferes with any of his intimate relationships. Kuvin was cited for parking his truck in front of the house he was renting during the prohibited time, not for visiting a close friend or relative in the City. Kuvin does not claim that any of his friends or family members were prevented from visiting him when he lived in the City. He does, however, claim that he is prevented from visiting his friends who live in the City after 7:00 p.m. in his truck. While Kuvin does not substantiate this claim and he has never been ticketed for visiting a friend in the City, the types of "intimate associations" that have found protection in the First Amendment have been more intimate than Kuvin occasionally visiting friends who currently reside in the City. See Wallace, 80 F.3d at 1051 ("The specific types of intimate associations which have found protection in the First Amendment have been more intimate than our image of typical coach-player relationships."). Even assuming Kuvin maintained or maintains a close friendship with individuals living in the City, we are unaware of, and Kuvin has failed to direct us to, "any authority which has recognized a close friendship, without more, as the highly personal or intimate human relationship that is protected by the United States Constitution." Henrise v. Horvath, 174 F.Supp.2d 493, 500 (N.D.Tex.2001) (footnote omitted).

B. Expressive Association

The second protected right of association is the right of "expressive association." *631 The First Amendment protects "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts, 468 U.S. at 622, 104 S.Ct. 3244. "According [constitutional] protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." Id. at 622, 104 S.Ct. 3244.
Although "[t]he First Amendment's protection of expressive association is not reserved for advocacy groups," in order "to come within its ambit, a group must engage in some form of expression, whether it be public or private." Boy Scouts of Am. v. Dale, 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000). If the group engages in "expressive association," constitutional protections are only implicated if the government action "would significantly affect the [group's] ability to advocate public or private viewpoints." Dale, 530 U.S. at 650, 120 S.Ct. 2446.
The Supreme Court cautioned in Stanglin that: "It is possible to find some kernel of expression in almost every activity a person undertakesfor example, walking down the street or meeting one's friends at a shopping mall but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." Stanglin, 490 U.S. at 25, 109 S.Ct. 1591 (emphasis added). To be classified as an expressive association, there is no requirement that the involved group be devoted to advocacy. Dale, 530 U.S. at 648, 120 S.Ct. 2446. Nor must the group take a public stance. Duarte, 481 U.S. at 548, 107 S.Ct. 1940. Similarly, "[t]he fact that the organization does not trumpet its views from the housetops... does not mean that its views receive no First Amendment protection." Dale, 530 U.S. at 656, 120 S.Ct. 2446. Instead, "[a]n association must merely engage in expressive activity that could be impaired in order to be entitled to protection." Id. at 655, 120 S.Ct. 2446. Such worthy endeavors might include service activities, Duarte, 481 U.S. at 548, 107 S.Ct. 1940, transmitting values like the Boy Scouts of America in Dale, 530 U.S. at 650, 120 S.Ct. 2446, and "civic, charitable, lobbying, fundraising, and other activities." Roberts, 468 U.S. at 627, 104 S.Ct. 3244.
The "expressive associations" that Kuvin asserts are constitutionally protected are: (1) his occasional visits to the homes of his friends who reside in the City between the hours of 7:00 p.m. and 7:00 a.m. or on the weekends in his open-bed pickup truck; and (2) the occasional visits by a friend who also drives a pickup truck. Kuvin asserts that when his friend came to his home to "talk, share ideas about work, or ideas about anything, [his friend] had to violate the City's ordinances and risk being cited for violating its ordinances."
Kuvin, however, fails to allege that the ordinances restrict the types of "expressive associations" that are protected under the First Amendment, and certainly, he lacks standing to raise any concerns a friend may have had, especially because Kuvin does not assert that the ordinances in question hampered visitation by his friend. Additionally, the types of expressive associations protected by the Constitution are clearly more "expressive" than Kuvin's occasional visits with his friends residing in the City after 7:00 p.m. or friends with trucks visiting him after 7:00 p.m. for the purpose of sharing time with each other and discussing issues and ideas. Kuvin, therefore, has failed to establish that his "associations" have a clearly articulated expressive identity worthy of *632 constitutional protection under the First Amendment.
More importantly, Kuvin's associations are not being restricted. Rather, the restrictions provided in the ordinances apply solely to his vehicle and the ordinances do not prohibit his ownership of a truck. The ordinances permit Kuvin to own and drive his pickup truck in the City. He simply must garage the vehicle at night. As the prohibited activity does not impinge on a fundamental right, the trial court did not err in failing to apply strict scrutiny in its constitutional analysis.

RATIONAL BASIS SCRUTINY
Because no suspect class or fundamental right is implicated, the City's zoning ordinances must be upheld if it can be shown that they bear a rational relationship to a legitimate public purpose. Stanglin, 490 U.S. at 23, 109 S.Ct. 1591. In other words, is the City's exercise of its police power rationally related to a legitimate purpose?
The judicial lens through which this Court must examine the City's exercise of its police power is governed by well-established law, beginning with the premise that rational basis scrutiny "is the most relaxed and tolerant form of judicial scrutiny," Stanglin, 490 U.S. at 26, 109 S.Ct. 1591 (emphasis added), and municipal zoning ordinances, which are legislative enactments, are presumed to be valid and constitutional. See Orange County v. Costco Wholesale Corp., 823 So.2d 732, 737 (Fla.2002) (specifying that ordinances reflecting legislative action are entitled to a presumption of validity); State v. Hanna, 901 So.2d 201, 204 (Fla. 5th DCA 2005) (holding that statutes and ordinances are presumed to be constitutional and all reasonable doubts must be resolved in favor of constitutionality).
Statutes and ordinances in Florida not only enjoy a presumption in favor of constitutionality, the Florida Supreme Court and this Court have repeatedly held that zoning restrictions must be upheld unless they bear no substantial relation to legitimate societal policies or it can be clearly shown that the regulations are a mere arbitrary exercise of the municipality's police power. See Dep't of Cmty. Affairs v. Moorman, 664 So.2d 930, 933 (Fla.1995) ("[W]e have repeatedly held that zoning restrictions must be upheld unless they bear no substantial relationship to legitimate societal policies."); Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Auth., 111 So.2d 439, 443 (Fla.1959) (holding that zoning regulations are presumptively valid, "and the burden is upon him who attacks such regulation to carry the extraordinary burden of both alleging and proving that it is unreasonable and bears no substantial relation to public health, safety, morals or general welfare"); City of Coral Gables v. Wood, 305 So.2d 261, 263 (Fla. 3d DCA 1974) ("A zoning ordinance will be upheld unless it is clearly shown that it has no foundation in reason and is a mere arbitrary exercise of power without reference to public health, morals, safety or welfare.").
A zoning regulation also must be upheld if reasonable persons could differ as to its propriety. In other words, "[i]f the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." Vill. of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 388, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Bd. of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469, 472 (Fla.1993); City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941).
"The fairly debatable rule has its basis in the deference that the judicial power owes the legislative function under *633 the separation of powers doctrine inherent in our form of government and expressly embodied in our state and federal constitutions." Albright v. Hensley, 492 So.2d 852, 856 (Fla. 5th DCA 1986) (Cowart, J., dissenting). Thus, "[t]he fairly debatable standard of review is a highly deferential standard requiring approval of a planning action if reasonable persons could differ as to its propriety." Martin County v. Yusem, 690 So.2d 1288, 1295 (Fla.1997).
In evaluating Kuvin's challenge to sections 8-11 and 8-12 of the City's Zoning Code, we do not, as the dissent charges, simply rubber stamp the City's ordinances. We apply the "relaxed and tolerant form of judicial scrutiny" mandated by the United States Supreme Court in Stanglin, 490 U.S. at 26, 109 S.Ct. 1591; apply the presumption of constitutionality afforded statutes and ordinances; recognize that the ordinances must be upheld unless they clearly can be shown to be an arbitrary exercise of the City's police power bearing no relation to any legitimate public purpose; and apply the highly deferential standard requiring that the ordinances be upheld where reasonable persons could differ as to their propriety. The dissent, however, completely ignores the legal principles upon which its review must be governed by: (1) failing to show any deference to the City's right to exercise its police power in enacting the ordinances; (2) failing to apply the relaxed and tolerant form of judicial scrutiny the United States Supreme Court mandates must be applied; and (3) ignoring that where a zoning ordinance is fairly debatable, the legislative enactment must control, and that this deference we must apply to legislative enactments under the separation of powers doctrine, is inherent in our form of government. Instead, the dissent seeks to impose its will on the definitional parameters of the City's legislative enactments.

SECTIONS 8-11 AND 8-12 OF THE CITY'S ZONING CODE ARE SUBSTANTIALLY RELATED TO A LEGITIMATE PURPOSE
The City asserts that the ordinances in question are a valid exercise of the City's police power because the ordinances seek to preserve the integrity of the residential areas and the unique aesthetic qualities of the City. Kuvin admits that a zoning ordinance may regulate or limit the use of property on behalf of the general welfare of its citizens and he recognizes that unless the City's exercise of its police power is clearly shown to be unreasonable, arbitrary, and without a substantial relation to the public health, safety, morals, or general welfare, the ordinance must be upheld. See Fox v. Town of Bay Harbor Islands, 450 So.2d 559, 560 (Fla. 3d DCA 1984) (holding that the burden of overcoming a zoning ordinance's presumption of validity is satisfied when it is shown that the ordinance does not bear a substantial relation to the public health, safety, morals, or general welfare). Kuvin's argument is that, while the ordinances' restrictions regarding trucks used for commercial purposes may pass constitutional scrutiny, these restrictions, when applied against personal-use trucks with no commercial markings, are arbitrary and unreasonable.

ZONING BASED ON AESTHETICS IS A VALID EXERCISE OF THE CITY'S POLICE POWER
This Court and other courts of this state have repeatedly found that measures designed to enhance or maintain the aesthetic appeal of a community are a valid exercise of a local government's police power and these measures bear a rational relationship to a legitimate purpose. "Florida has long recognized that local *634 governments may legislate to protect the appearance of their communities as a legitimate exercise of their inherent police power." City of Sunrise v. D.C.A. Homes, 421 So.2d 1084, 1085 (Fla. 4th DCA 1982) (emphasis added); see also City of Lake Wales v. Lamar Adver. Ass'n of Lakeland, Fla., 414 So.2d 1030, 1032 (Fla.1982) (recognizing that "[z]oning solely for aesthetic purposes is an idea whose time has come; it is not outside the scope of the police power") (quoting Westfield Motor Sales Co. v. Town of Westfield, 129 N.J.Super. 528, 324 A.2d 113, 119 (1974)); Int'l Co. v. City of Miami Beach, 90 So.2d 906, 906 (Fla.1956) (finding that zoning regulations based on aesthetics are relevant to maintaining the general welfare and well-being of a community); Metro. Dade County v. Section 11 Prop. Corp., 719 So.2d 1204 (Fla. 3d DCA 1998) (reinstating administrative agency's denial of a special exception to develop land with an industrial-looking mini self-storage facility, finding that aesthetics may be properly considered by the agency); Campbell v. Monroe County, 426 So.2d 1158, 1160 (Fla. 3d DCA 1983) ("We agree that a Florida county may enforce zoning requirements which primarily regulate aesthetic appearances.") (emphasis added); Lamar-Orlando Outdoor Adver. v. City of Ormond Beach, 415 So.2d 1312, 1316 (Fla. 5th DCA 1982) (upholding an ordinance banning billboards and off-site advertising in Ormond Beach, a primarily residential community, as a valid exercise of the police power); Moviematic Indus. Corp. v. Bd. of County Comm'rs of Metro. Dade County, 349 So.2d 667, 669 (Fla. 3d DCA 1977) (holding that "zoning regulations which tend to preserve the residential or historical character of a neighborhood and/to enhance the aesthetic appeal of a community are considered valid exercises of the public power as relating to the general welfare of the community"); Wood, 305 So.2d at 263 (recognizing that "[a]esthetic considerations have been held to be a valid basis for zoning in Florida" and finding that an ordinance prohibiting campers or other vehicles designed or adaptable for human habitation from being kept or parked upon public or private property within the City of Coral Gables, unless confined in a garage, was reasonable and constitutional); see also Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla.1960), receded from on other grounds by City of Lake Wales, 414 So.2d at 1032; Rotenberg v. City of Fort Pierce, 202 So.2d 782 (Fla. 4th DCA 1967); State ex rel. Boozer v. City of Miami, 193 So.2d 449 (Fla. 3d DCA 1967).
These cases establish clear and binding precedent of the Florida Supreme Court and this Court upholding zoning regulations that tend to preserve the residential character of a neighborhood and/or to enhance the aesthetic appeal of a community.
What the City seeks to preserve is the residential character of the City. One may own and park any private passenger car regardless of its make, model, color, year, or condition anywhere in the City day or night. One may also own and drive a truck, recreational vehicle, or camper, but one must park these vehicles in an enclosed garage at night. The ordinances do not restrict diversity because they do not restrict ownership or use. The ordinances only restrict where these commercial-looking vehicles are parked at night.

THE CITY'S ZONING ORDINANCES ARE NOT UNCONSTITUTIONAL AS APPLIED TO KUVIN'S PERSONAL-USE, OPEN-BED PICKUP TRUCK
Kuvin argues that the subject zoning ordinances are unconstitutional as applied to his open-bed pickup truck because it is not a recreational vehicle nor a vehicle *635 used for commercial purposes. In other words, based on Kuvin's argument, if he was a handyman or construction worker by trade and used his open-bed pickup truck for commercial purposes, the City could constitutionally restrict his ability to park his truck in front of his house in the City at night, even if he left all of his supplies and equipment at the business. On the other hand, if Kuvin only used his pickup truck for personal use, it would be unconstitutional to restrict his ability to park his truck in front of his house at night with a surfboard, painting supplies, construction materials, smelly fishing nets, or a number of other items in the open bed of his truck.
To base the constitutionality of the ordinances solely on whether a person uses his vehicle for personal or commercial purposes would create an irrational classification, lead to absurd results, and be impractical, if not impossible, to enforce. The "personal use" classification or exception is irrational because trailers may be used solely for personal use, as may recreational vehicles (and this Court in 1974 in Wood specifically upheld the City's ordinance restricting where campers and other recreational vehicles are parked). Also, Kuvin's personal use classification/exception, if adopted, would mean that all trucks, regardless of their size would be constitutionally protected if they are used for personal purposes. And lastly, Kuvin's personal use classification/exception would be impractical to enforce because it is not always obvious how the vehicle's owner uses the vehicle, and in many cases, its owner may use the vehicle for both commercial and personal purposes. That is why the ordinances restrict the parking of all trailers, recreational vehicles, and trucks in residential neighborhoods at night unless enclosed in a garage, not just those that are used for recreational or commercial purposes.
These ordinances make perfect sense and are rationally related to maintaining and enhancing the residential character and the aesthetics of the City's neighborhoods because any vehicle that was designed for commercial use, regardless of whether it is used for commercial purposes, looks the same and is likely to be used to store and carry bulk material exposed to public view. The restriction, therefore, is rationally related to the health and welfare of the residents in the City.
Maintaining the aesthetics of the City is rationally related to the welfare of the City. The courts in this state and others have recognized that aesthetics can be an important factor in ensuring the economic vitality of an area and that the separation of the commercial from residential not only affects the health and hazards of the community, it impacts the welfare of the community and the value of property within its borders. The "attractiveness of a community... [is] of prime concern to the whole people and therefore affect[s] the welfare of all." Merritt v. Peters, 65 So.2d 861, 862 (Fla.1953); see also United Adver. Corp. v. Borough of Metuchen, 42 N.J. 1, 198 A.2d 447, 449 (1964) ("There are areas in which aesthetics and economics coalesce, areas in which a discordant sight is as hard an economic fact as an annoying odor or sound.").
Ordinances prohibiting trucks, trailers, and campers from being parked in residential neighborhoods have withstood constitutional challenges and have been upheld by various Florida courts. The common thread appears to be the intent to preserve the residential feel and look of the residential areas of the communities that have enacted these ordinances, which Florida's courts have determined is a legitimate governmental interest.
*636 We begin with this Court's ruling in Wood, which involved an ordinance similar to section 8-11 of the City's Zoning Code. 305 So.2d at 261. The ordinance this Court reviewed in Wood prohibited campers, house trailers, and any other vehicle or part of a vehicle designed or adaptable for human habitation, from being parked or kept on public or private property in Coral Gables unless enclosed in a garage. In upholding the ordinance, this Court concluded that zoning ordinances enacted for aesthetic considerations are a valid exercise of a city's police power and this Court did not restrict constitutional application of the ordinances based on the actual use of the vehicle. In Wood, this Court held that a neighborhood's aesthetics is integrally bound to its property values and is a relevant zoning consideration, and because Wood was not being deprived of his right to own a camper or recreational vehicle or to store it on his property, but rather, only being required to store it in a garage or similar structure, the ordinance was not unreasonable. Id. at 263-64. Thus, this Court concluded that the City's ordinance was a valid exercise of the City's police power on its face and as applied to Wood.
This Court, therefore, has already spoken loudly and clearly on the constitutionality of ordinances enacted for aesthetic reasons, and has found that where the ordinance does not restrict ownership or use of the vehicle, it is not unreasonable. Likewise, the ordinances in the instant case were enacted for aesthetic reasons, prohibiting vehicles designed for commercial use from being parked in residential neighborhoods at night, but not restricting ownership or use, and providing a garage exception. Therefore, based upon Wood, the ordinances in question are constitutional.
Kuvin has not clearly shown that the City's ordinances have no foundation in reason and are merely arbitrary. Kuvin's pickup truck has a large open bed, an open space clearly designed for transporting material used in trade or commerce, property, cargo, or bulk material. Whether Kuvin actually uses his truck to transport material used in trade or commerce, the "look" is still the same. If the City may regulate the parking of trucks with open spaces designed and used for commercial purposes in residential neighborhoods, it is illogical to conclude that the very same trucks may not be regulated if their owners do not use them for their designed purpose. Either way, the vehicle is the same vehicle and the effect upon the residential character of the City is the same because the open space of the vehicle is not designed for passenger travel. The City's ordinances also do not regulate ownership or use. They only regulate where such vehicles are parked at night. Thus, the ordinances, as applied to Kuvin's open-bed pickup truck, are reasonable and not a mere arbitrary exercise of the City's police power.
We also note that the Second District in Henley v. City of Cape Coral, 292 So.2d 410 (Fla. 2d DCA 1974), reached the same conclusion as this Court and is directly on point. In Henley, the Second District upheld an ordinance prohibiting trucks and house trailers of any kind from being parked in the subdivision for more than four hours, and trucks from being parked overnight in all areas zoned residential. Id. at 411. The ordinance provided that no truck, whether being used for commercial or personal purposes, could be parked overnight in residential areas. The court, in upholding the constitutionality of the ordinance, held that the ordinance, which was intended "to protect [the city's] residential neighborhoods against the lingering presence of commercial vehicles," *637 was rationally related to a legitimate governmental interest and was not unreasonable nor overbroad as the ordinance did not result in a total ban since it provided for a "garage exception." Id. Henley is indistinguishable from this case.
Henley cannot be distinguished from the instant case as the ordinance in Henley, just like the ordinances in the instant case, prohibits all trucks, including personaluse trucks, from being parked for longer than four hours or overnight in residential areas unless enclosed in a garage or a similar structure. The Second District made no distinction in Henley between large trucks and small trucks, or whether they are being used for commercial purposes or solely for personal use, as long as they were designed for commercial use. Likewise, the ordinances in the instant case make no distinction between large trucks and small trucks, or whether they are being used for commercial purposes or for personal use as long as they were designed for commercial use. The ordinances regulate the parking of trucks, trailers, commercial vehicles, and recreational vehicles within the City regardless of their use. The City defines a "truck" as "[a]ny motor vehicle designed, used or maintained for transporting or delivering property or material used in trade or commerce in general ... includ[ing] any motor vehicle having space designed for and capable of carrying property, cargo, or bulk material and which space is not occupied by passenger seating." Coral Gables, Fla., Zoning Code § 2-2128.
The Fourth District Court of Appeal's ruling in Proctor, 396 So.2d at 771, relied on by the dissent, does not require that we reach a contrary conclusion. In Proctor, the Fourth District addressed the City of Coral Springs' ordinance prohibiting the parking of commercial vehicles on a public right-of-way adjacent to or on private property during certain times unless in a garage or carport. The Fourth District concluded that the ordinance, as applied to Proctor's truck, which had no commercial markings and was not used for commercial purposes, was unconstitutional. The issue in Proctor, however, was not whether a municipality could constitutionally restrict where trucks, trailers or campers are parked, but rather whether the classification of Proctor's personal-use pickup truck as a commercial vehicle was reasonable. The analysis dealt with the reasonableness of the City of Coral Springs' inclusion of personal-use trucks in its definition of a "commercial vehicle," because only commercial vehicles were being restricted.
In contrast, the ordinances in the instant appeal do not restrict commercial vehicles. They restrict all trailers, campers, recreational vehicles, and trucks. Thus, the reasonableness of the application of the ordinances, as applied to Kuvin's open-bed pickup truck, is beyond question. Interestingly, the Proctor court specifically recognized that an ordinance should be upheld "unless it is clearly shown that it has no foundation in reason and is a mere arbitrary exercise of power without reference to public health, morals, safety or welfare," and that "[z]oning measures designed to enhance the aesthetic appeal of a community have been recognized as a valid exercise of the police power." Id. at 771-72 (citing Wood, 305 So.2d at 263). In fact, the Proctor court noted that the ordinance in Wood was not arbitrary or unreasonable because its aim was to prevent "the unsightly appearances and diminution of property values that occurred when camper-type vehicles were parked or stored out of doors in residential areas of a community." Proctor, 396 So.2d at 772. Likewise, sections 8-11 and 8-12 of the City's Zoning Code are not arbitrary or unreasonable because the ordinances seek *638 to preserve the residential character and the overall aesthetics of the City by regulating where vehicles designed for transporting things are parked.
Because sections 8-11 and 8-12 of the City's Zoning Code: are constitutional on their face; are constitutional as applied to personal-use trucks designed for commercial purposes; are rationally related to a legitimate governmental interest; and provide a "garage exception," they are constitutional as applied to Kuvin's 1993 Ford F-150 open-bed pickup truck. The fact that the particular house Kuvin chose to rent in the City does not have a garage or an enclosed place where he could park his vehicle at night does not alter this conclusion. Kuvin was on notice regarding the City's ordinances when he chose to rent at a location that did not have a garage.

THE AS-APPLIED ARGUMENTS RAISED AND RELIED ON BY THE DISSENT WERE NOT RAISED BY KUVIN
The dissent bases much of its argument on a challenge and arguments not raised by Kuvin and supports its arguments on its own independent investigation, evidence outside the record, and case law generated outside the State of Florida that is unrelated to the challenges raised and argued by Kuvin. Thus, the arguments raised in the dissent are not relevant to this appeal.
Kuvin's "as-applied" challenge is as to all personal-use truckslarge and small, heavy and light, wide and narrow. He simply asserts that because he uses his pickup truck for personal use, as opposed to commercial use, the City's zoning ordinances are unconstitutional as applied to him. Kuvin's "as-applied" constitutional challenge does not include the argument that the City's zoning ordinances are unconstitutional as applied to the particular make, model, size, or weight of his truck. His "as-applied" challenge is as to all personal-use trucks.
The dissent, however, premises it arguments on an "as-applied" challenge not raised by Kuvin in this appealthat because Kuvin drives a truck, which the dissent classifies as a "light truck," the zoning ordinances are unconstitutional as applied to his truck. The dissent's classification of Kuvin's truck as a "light truck," along with the weight and dimensions provided by the dissent, were obtained by its own independent research, and thus not a part of the record on appeal. Additionally, the weight and dimensions relied on by the dissent do not even apply to Kuvin's pickup truck, as they allegedly relate to the 2010 Ford F-150 truck, whereas Kuvin's truck is a much older 1993 model, which judging from the picture provided by Kuvin, is larger than the 2010 model.
In addition to its reliance on a challenge and arguments not raised by Kuvin and "evidence" outside of the record, the dissent bootstraps its argument with the holding in City of Nichols Hills v. Richardson, 939 P.2d 17 (Okla.Crim.App.1997). Nichols Hills is an Oklahoma case not relied on by either the City or Kuvin and decided on different grounds than those raised in this appeal. The Nichols Hills ordinance prohibited the parking of commercial and recreational vehicles, trailers, taxi-cabs, mobile homes, and other vehicles except private passenger vehicles within certain zoned districts in Nichols Hills, Oklahoma, during certain times, unless the vehicle was screened from view. Pickup trucks were specifically excluded from the definition of private passenger vehicles and thus fell within the ordinance's prohibitions. While the Nichols Hills court found that "[a]esthetic zoning measures aimed at maintaining property values, thereby promoting the general welfare, can be a valid and permissible exercise of the police power," *639 Nichols Hills, 939 P.2d at 19, the court concluded that a blanket prohibition of all pickup trucks regardless of weight, width, or other factors, including its age or condition, was overbroad as applied to all pickup trucks and as applied to the pickup truck in question.
The Nichols Hills case is an Oklahoma case. Thus, we are not required to follow it, and unlike Wood and Henley, failure to apply its holding in our case presents no conflict. More importantly, Nichols Hills conflicts with established Florida law and was decided on grounds inapplicable to the arguments raised by Kuvin in this appeal.
The Nichols Hills appellee purchased her home in Nichols Hills in 1980 and had driven a pickup truck since that time. Neither the zoning ordinance she was found to have violated, which was enacted in 1989, nor its predecessor, was enforced against her until 1991. It is undisputed that the appellee used her pickup truck for both personal use and commercial purposes. The appellee sought and was denied a variance based on an economic hardshipthat she could not afford a separate personal use vehicle. Thus, the appellee's challenge in Nichols Hills was regarding pickup trucks used for both personal and commercial purposes, and the court's ruling struck down the ordinance as applied to both personal use and commercial use pickup trucks, holding that such a restriction, without taking into consideration the size, weight, and condition of the vehicle was too broad.
Conversely, the City's ordinances in the instant case were in effect long before Kuvin decided to rent a house in the City, and Kuvin has since relocated outside the City. Unlike the appellee's challenge in Nichols Hills, Kuvin did not apply for a hardship variance and his constitutional challenge was not based on the model, size, weight, or condition of his pickup truck. His challenge was based on his use of his pickup truck. Thus, Nichols Hills is not relevant to Kuvin's constitutional challenge. In fact, Kuvin concedes that ordinances restricting trucks used for commercial purposes are constitutional.
The Nichols Hills, which found the ordinance unconstitutional as applied to both pickup trucks used for personal use and commercial use because the ordinance did not address size, weight, model, or condition of the truck, clearly conflicts with Florida law. See Henley, 292 So.2d at 411 (upholding an ordinance prohibiting trucks of any kind and regardless of its use from being parked overnight in residential areas unless in a garage). Because the dissent's as-applied argument was not raised by Kuvin, the evidence to support it is outside of the record, and the case law relied on by the dissent is an Oklahoma case decided on grounds not raised in this appeal and which conflicts with Florida law, we reject their application to this appeal.

THE ORDINANCES ARE NOT UNCONSTITUTIONALLY VAGUE
Kuvin also asserts that the ordinances are void for vagueness as they do not give him or persons of ordinary intelligence fair notice of what constitutes the forbidden conduct. Kuvin claims that the vagueness of the ordinances invites arbitrary and selective enforcement against pickup trucks, as the ordinances are not enforced against sport utility vehicles, which technically meet the definition of "truck" under the City's ordinances. This argument is without merit.
The standard for testing vagueness is whether a statute or ordinance "gives a person of ordinary intelligence fair notice of what constitutes forbidden *640 conduct." Jones v. Williams Pawn & Gun, Inc., 800 So.2d 267, 270 (Fla. 4th DCA 2001) (citing Sieniarecki v. State, 756 So.2d 68, 74 (Fla.2000)). "The language of the statute [or ordinance] must provide a definite warning of what conduct is required or prohibited, measured by common understanding and practice." Jones, 800 So.2d at 270.
Sections 8-11 and 8-12 of the City's Zoning Code prohibit the overnight parking of "trucks" except in an enclosed space or garage. The Zoning Code defines "truck" as "[a]ny motor vehicle designed, used or maintained for transporting or delivering property or material used in trade or commerce in general." Coral Gables, Fla., Zoning Code § 2-128. The City's Zoning Code further specifies that "[t]rucks shall include any motor vehicle having space designed for and capable of carrying property, cargo, or bulk material and which space is not occupied by passenger seating." Id. In this instance, there is no doubt that Kuvin's Ford F-150 pickup truck, as defined by the City's Zoning Code, is a "truck." Kuvin admits that his pickup truck is a "truck." Consequently, as sections 8-11 and 8-12 of the Zoning Code forbid the overnight parking of "trucks" and Kuvin's pickup truck clearly falls within the Zoning Code's definition of "truck," Kuvin had fair notice of the prohibited conduct. We additionally note that, prior to being cited by the City, Kuvin received a written warning notifying him that his conduct was prohibited. We, therefore, conclude that sections 8-11 and 8-12 of the City's Zoning Code, as applied to Kuvin, are not void for vagueness.
Additionally, Kuvin lacks standing to challenge sections 8-11 or 8-12 of the City's Zoning Code on the premise that the ordinances may conceivably be applied unconstitutionally to others. We, therefore, need not address his arguments on this ground. Jones, 800 So.2d at 270 (specifying that if a person is "engaged in some conduct clearly proscribed by the plain and ordinary meaning of the statute [or ordinance], then [that person] cannot successfully challenge it for vagueness nor complain of its vagueness as applied to the hypothetical conduct of others") (quoting Sieniarecki, 756 So.2d at 74-75).

CONCLUSION
Municipal zoning ordinances, which are legislative enactments, are presumed to be valid and constitutional. Because the ordinances do not impinge on a fundamental right, the trial court correctly applied rational basis scrutiny in evaluating the ordinances and recognized that the ordinances in question must be upheld as constitutional unless they are not rationally related to a legitimate purpose. The City may constitutionally pass ordinances to enhance or maintain the aesthetic appeal of the community and to protect the City's residential neighborhoods against the lingering presence of commercial-looking vehicles. Sections 8-11 and 8-12 of the City's Zoning Code, which restrict where recreational vehicles, commercial vehicles, trailers, and trucks are parked within the City, are rationally related to a legitimate purpose. Kuvin's truck has a large open bed, a space designed for the storage and transporting of cargo in plain view. Thus, the ordinances prohibiting trucks and other vehicles containing space for transporting or delivering property, rather than for passenger travel, are constitutional as applied to Kuvin. We therefore affirm the trial court's order upholding the ordinances.
Affirmed.
GERSTEN, WELLS, SUAREZ and LAGOA, JJ., concur.
*641 SHEPHERD, J., specially concurring.
I concur in the decision of the majority in this case. However, I am troubled by the implicit premise from which both the majority and dissent reason, namely that the constitutionality of the ordinances in this case rests upon a present-day judgment concerning their validity. See Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004) (interpreting statute in light of its "text, structure, purpose, and history"); see also Rinker Materials Corp. v. City of N. Miami, 286 So.2d 552, 553 (Fla.1973) (applying same principles of interpretation to a city ordinance). These ordinances were adopted more than three decades ago. They pre-date the widespread use of pickup trucks as a normal mode of transportation. The dissent concedes the ordinances "might have made some sense and might have been rationally related to aesthetics as applied to then-existing [prior to the 1970's] vehicles." See infra p. 854. But, concluding "we're not in Kansas anymore," it would strike down the ordinances as applied to pickup trucks today. See infra p. 854. I do not agree. Pickup trucks existed when the ordinances were adopted. There are simply more today. It is up to the Coral Gables City Commission to decide whether to make any change in their ordinances. See Gregg v. Georgia, 428 U.S. 153, 175, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.) (quoting Furman v. Georgia, 408 U.S. 238, 383, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting) ("[I]n a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people.")).
I am more concerned by the enthusiasm with which the majority embraces these ordinances. I do not believe the ordinances "make perfect sense." See supra p. 845. In fact, it is not our place to so decide. Aesthetic judgments necessarily are subjective in nature, defying objective evaluation. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 510, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); see also Palmetto Dunes Resort v. Brown, 287 S.C. 1, 336 S.E.2d 15, 19, n. 2 (1985) (quoting I. Kant, The Critique of Judgment 41 (Judge J.C. Meredith Trans. 1952)) ("The judgment of taste ... is not a cognitive judgment, and so not logical, but is aesthetic which means that it is one whose determining ground cannot be other than subjective."). Legislation of aesthetics risks the replacement of a property owner's views with the views of a public official. Zoning based upon aesthetics also infringes upon personal freedom.
Because of the problems for judicial review presented by subjective policy-making like that contained in the ordinances being reviewed heresome states constitutionally eschew zoning restrictions based solely upon aesthetic considerations. These states require, as a matter of constitutional principle, that such zoning restrictions be tied to a traditional state police power. Bd. of Supervisors of James City County v. Rowe, 216 Va. 128, 216 S.E.2d 199, 213 (1975) (holding a design restriction ordinance invalid where the principal purpose of the ordinance was to achieve a particular aesthetic appearance instead of protecting property values or other legitimate function of the police power); see City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660, 664 (1962) (concluding a rezoning decision was invalid where the proposal to rezone was due to "aesthetic or group caprice," not a public health, safety, moral or general welfare reason); see also Coscan Wash., Inc. v. Md.-Nat'l Capital Park & Planning Comm'n, 87 Md.App. 602, 590 A.2d 1080, 1088 (1991); Rogalski v. Twp. of Upper Chichester, 406 Pa. 550, 178 A.2d 712, 714 (1962); see generally *642 John J. Costonis, Law and Aesthetics: A Critique and a Reformulation of the Dilemmas, 80 Mich. L. Rev. 355 (1981). Florida does not. Accordingly, under Florida law, I am honor-bound to join the majority in this case.
If I were a member of the Coral Gables City Commission, I might argue it is improvident to maintain the ordinances before us on the City's books. As a member of this Court, I am not privileged to do so. However, under our system of government, it is our expectation as citizens that improvident decisions of local government, as distinguished from unlawful decisions, "will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (quoting Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)). This is as it should be.
I concur in the judgment of the majority.
CORTIÑAS, Judge (dissenting).
The en-banc majority overturns the original panel opinion by employing a rational basis test that appears to be patterned after the proverbial rubber stamp. The inevitable conclusion drawn from its opinion is that virtually any government action done under the guise of protecting the public health, safety, and welfare enjoys judicial immunity under its constrained version of the rational basis test. Respectfully, that is simply not the law. Under a rational basis review for constitutionality of a classification, the United States Supreme Court has held that the government "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); see Zobel v. Williams, 457 U.S. 55, 61-63, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982); United States Dep't of Agric. v. Moreno, 413 U.S. 528, 535, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).
The precise issue in this case is whether the Coral Gables ordinances before us, as applied to Mr. Kuvin's Ford F-150 vehicle, are constitutional. We reject Mr. Kuvin's claim that the ordinances are facially unconstitutional since we readily envision numerous applications of the ordinances, such as when dealing with a cement truck or a dump truck, that would render them constitutional. Thus, on the grounds raised by appellant, the ordinances are facially constitutional. See Cashatt v. State, 873 So.2d 430, 434 (Fla. 1st DCA 2004) (holding that a facial challenge to a statute is more difficult than an "as applied" challenge because the challenger must establish that no set of circumstances exists under which the statute would be valid). Accordingly, we are left with only an as-applied constitutional challenge that examines the application of the Coral Gables ordinances vis-à-vis an F-150 vehicle. It is here where the ordinances simply bear no rational relationship to the city's legitimate responsibility of protecting the public health, safety, and welfare.

As-Applied Constitutional Review

A. The Ford F-150.

We begin by examining the type of vehicle involved in this case. For the past twenty-eight years in a row, the Ford F-150 has been the best-selling vehicle in the United States. See Ford F-Series: Best Selling Truck 33 Years Running, http:// www.fordinthenews.com/ford-f-series-best-selling-truck-33-years-running/; Edmunds Ford F-150 Overview, www. edmunds.com/ford/f150/2010/review.html. *643 This particular vehicle is so popular that one is likely to see it during any routine drive in virtually any city in America. It is also common knowledge that many citizens, just like Mr. Kuvin, choose to drive a light truck as their personal mode of transportation. Moreover, the dimensions of a Ford F-150 (211.2 inches × 78.9 inches × 73.7 inches) are comparable to those of a Ford Crown Victoria (212 inches × 77.3 inches × 58.3 inches) and a Lincoln Town Car (215.4 inches × 78.5 inches × 59 inches). In fact, the Ford F-150 is smaller than many SUVs. Because its payload capacity is less than 4,000 pounds, the Ford F-150 is considered a light truck. Wikipedia, Light Truck, http://en. wikipedia.org/wiki/Light_duty_truck (Light truck or light duty truck is a classification for trucks or truck-based vehicles with a payload capacity of less than 4,000 pounds.).

B. The Personal Use of Appellant's Vehicle.

Next, we consider the fact that this case involves Mr. Kuvin's personal-use vehicle. There is no record evidence of any commercial markings or commercial use whatsoever. Similarly, there is also no evidence that Mr. Kuvin's F-150 was carrying any cargo at the time of the offense. Mr. Kuvin simply possessed an F-150 for his personal use and was cited for parking it overnight in his driveway.

C. The Coral Gables Ordinances.

Section 8-11 of the City of Coral Gables' Zoning Code provides, in pertinent part, as follows:
Sec. 8-11  Parking in residential areas.
(a) It shall be unlawful for any person to park any vehicle displaying advertising signs or any truck, trailer, commercial vehicle, or recreational vehicle, in or upon any property, public or private, in any area of the city which is zoned residential.
Coral Gables, Fla., Zoning Code § 8-11(a) (emphasis added).
Section 8-12 of the Coral Gables Zoning Code provides:
Sec. 8-12  Trucks, trailers, commercial vehicles, and recreational vehicles  Parking upon streets and public places.
Except as provided for herein no trucks, trailers, commercial vehicles, or recreational vehicles, shall be parked upon the streets or other public places of the City between the hours of 7:00 p.m. on one day and 7:00 a.m. of the next day. This prohibition is in addition to the total prohibition covering residential areas dealt with in Section 8-11 hereof.
Coral Gables, Fla., Zoning Code § 8-12 (emphasis added).
These ordinances do not contain any limitations whatsoever concerning the weight or dimensions of trucks being prohibited from driveways or public areas. In addition, the definition of "truck" under the ordinances is so broad that it encompasses every single SUV,[2] station wagon, and vehicle with a cargo space, no matter how small. See Coral Gables, Fla., Zoning Code § 2-128.
Under the Coral Gables Zoning Code, a "truck" is defined as:
any motor vehicle designed, used or maintained for transporting or delivering property or material used in trade or *644 commerce in general. Trucks shall include any motor vehicle having space designed for and capable of carrying property, cargo, or bulk material and which space is not occupied by passenger seating.

Coral Gables, Fla., Zoning Code art. 8 (2010) (formerly Coral Gables, Fla., Zoning Code § 2-128) (emphasis added).
Under the City's broad definition, every single SUV or station wagon is a "truck" as it has space designed for and capable of carrying property or cargo and which space is not occupied by passenger seating. Even a car or minivan that has a folding rear seat row becomes a "truck" under such a broad and arcane definition. Perplexingly, the existence of an ordinary trunk could metamorphosize a car in Miami or Tallahassee into a "truck" in Coral Gables. While, at the time of its enactment more than three decades ago, such a definition of "truck" might have made some sense and might have been rationally related to aesthetics as applied to then-existing vehicles, that is clearly no longer the case in 2010. The obvious and dramatic changes in vehicle design from the 1970s to the present make it evident that "we're not in Kansas anymore."
In stark contrast to the Coral Gables ordinances, other municipalities have imposed weight and dimension limitations on their ordinances regulating trucks. See, e.g., Vill. of N. Aurora v. Anker, 357 Ill. App.3d 1049, 294 Ill.Dec. 470, 830 N.E.2d 882 (2005) (involving ordinance wherein a truck the length of defendant's, when driven on a non-designated highway, may weigh no more than 73,280 pounds); City of Madison v. Crossfield, 671 N.W.2d 717 (Wis.Ct.App.2003) (involving residential area zoning restriction allowing the parking of passenger automobiles, passenger trucks and bicycles, provided they are of less than one ton in "capacity"); City of Mentor v. Brettrager, No. 2000-L-150, 2002 WL 603055 (Ohio Ct.App. April 19, 2002) (involving ordinance which prohibited vehicles weighing in excess of 5,050 lbs. from parking in appellant's neighborhood).
As applied to this particular case, the city ordinances prohibit any truck, including a personal-use light truck, from being parked in the private driveway of a Coral Gables residence. Similarly, all trucks, including the Ford F-150 vehicle, are prohibited by ordinance from being parked in a Coral Gables metered-parking space or other public area of the City during the evening and overnight hours. Thus, under the subject ordinances, anyone wishing to dine in Coral Gables may not park a personal-use light truck in any public area of the City or any residential driveway.

D. The Only Reported Case Directly on Point: A Red Cow Case.

There is only one reported case in the entire country that involves the application of a similar ordinance to a personal-use light truck. See City of Nichols Hills v. Richardson, 939 P.2d 17 (Okla.Crim.App. 1997). City of Nichols Hills is a "red cow" case,[3] which addressed the precise vehicle and issue before us and struck down a virtually identical regulation as not rationally related to aesthetics. Id. Nichols Hills is an affluent neighborhood, similar to Coral Gables, near Oklahoma City. In City of Nichols Hills, the appellant was cited for violating a city ordinance by parking her pickup truck in the driveway of her Nichols Hills home between the *645 hours of 2:00 a.m. and 5:00 a.m. Id. at 17-18. There, the City argued "(a) that `aesthetics' is one of the primary reasons the ordinance was enacted and (b) that the prohibition against pickups `directly relates to the City's interest in controlling land use and maintaining land values.'" Id. at 19. The Oklahoma Court of Criminal Appeals held that, as applied to that appellant and all pickup trucks, the ordinance was unreasonable and overbroad. Id. at 20.

E. Personal-use Vehicles v. Commercial and Recreational Vehicles.

While commercial and recreational vehicles have been the subjects of judicially-upheld regulations based on aesthetic considerations, personal-use vehicles have not.
Commercial vehicles include tow trucks, dump trucks, and buses, among others, while recreational vehicles may include trailers, campers, motor homes, and boats, among others. Courts have upheld municipal ordinances prohibiting the outside parking or storage of commercial and recreational vehicles in residential areas. See, e.g., City of Coral Gables v. Wood, 305 So.2d 261, 263 (Fla. 3d DCA 1974) (upholding zoning ordinance prohibiting campers, trailers, and other vehicles "designed and adaptable for human habitation" on public and private property within the City of Coral Gables as applied to a resident who parked an Apache vehicle in his backyard in a residential area); City of Blue Springs v. Gregory, 764 S.W.2d 101 (Mo.Ct.App. 1988) (upholding ordinance prohibiting the parking or storing of commercial vehicles over six tons in residential areas except while making deliveries). While some trucks, especially those with large dimensions and payloads, may be considered commercial vehicles, no case has ever held trucks of every kind to be commercial vehicles per se.
In Wood, this court upheld a different Coral Gables ordinance affecting campers, which restricted the parking of an Apache camper on public and private areas of the city. Wood, 305 So.2d 261. The Apache camper is not a self-propelled vehicle as it must be towed and cannot be driven by itself. Moreover, the height, width, and length of an Apache camper are also greater than those of any personal-use vehicle. In Wood, we stated:
[T]he Coral Gables [Camper] ordinance is aimed at preventing unsightly appearances and diminution of property values which obtain when camper-type vehicles are parked or stored out of doors in a residential area of the community.
Id. at 263. We went on to hold that the owner of the Apache camper "was only restricted from indulging in a use that would impinge upon the rights of other property owners." Id. at 264. For these reasons, Wood correctly recognized that municipalities may properly regulate campers under their police powers aimed at aesthetics. The same simply cannot be said with respect to an F-150. It would be ludicrous to suggest that the parking of an F-150 in a driveway or public area of a municipality is "indulging" in a use that impinges upon the property rights of others.
Personal-use vehicles include cars, station wagons, minivans, sport-utility vehicles ("SUVs"), and light trucks. Record evidence shows that the category of light trucks may encompass pickup trucks, minivans, and SUVs, many of which are smaller in length than some full-size cars. In sharp contrast to cases involving commercial and recreational vehicles, no case has ever upheld an as-applied constitutional challenge to a regulation banning a personal-use vehicle. As noted earlier, this precise issue was addressed in City of Nichols Hills, where the court struck *646 down the regulation, as applied to a pickup truck, as not rationally related to aesthetics. Id.

F. The Majority's Flawed Reasoning.

1. Cases Decided on Facial Constitutional Review Are Inapposite.

In order to support its holding, the majority attempts to draw parallels to cases involving a facial constitutional challenge to similar ordinances. See Henley v. City of Cape Coral, 292 So.2d 410, 411 (Fla. 2d DCA 1974). This is simply a red herring. In fact, the majority's bold claim that Henley is "indistinguishable" from this case is belied by the obvious and glaring distinction that Henley only considered a facial constitutional claim. In contrast, the original panel opinion and this dissent are squarely grounded on the unconstitutional nature of the Coral Gables ordinances as applied to Mr. Kuvin's F-150 vehicle. The fact that the ordinances may survive a facial constitutional challenge has nothing to do with this case.
In Henley, the Second District, confronted solely with a facial challenge, upheld a municipal ordinance which prohibited trucks of any kind from being parked overnight in all residentially-zoned areas regardless of whether the truck was being used for commercial or personal purposes. Id. Importantly, the Henley court was not presented with an as-applied challenge to the ordinance. Id. Instead, the court considered only the facial constitutionality of an ordinance and found it to be "on the whole reasonable." Id. Nevertheless, most significant to our case, the Second District acknowledged that, if confronted with an as-applied challenge, such an ordinance "may be unconstitutionally applied as for example to a station wagon which gives no outward appearance of being used in business." Id. (emphasis added).

2. Majority Expressly and Directly Conflicts with the Fourth District.

The majority's opinion is in express and direct conflict with the Fourth District's opinion in Proctor v. City of Coral Springs, 396 So.2d 771, 774 (Fla. 4th DCA 1981). City of Coral Springs, like the case before us, dealt with the type of situation foreseen in Henley: a municipal ordinance that, as applied, prohibited the parking of a personal-use vehicle on residential property. City of Coral Springs, 396 So.2d 771-74. The Coral Springs ordinance prohibited "commercial vehicles" only, while the Coral Gables ordinance's prohibition encompasses "trucks, trailers, commercial vehicles, [and] recreational vehicles." Mr. Proctor's vehicle was a personal-use pickup truck without commercial markings, like Mr. Kuvin's, which qualified as a "commercial vehicle" because it weighed three-quarters of a ton. Id. at 771. The Fourth District held that the subject ordinance was unreasonable and unconstitutional as applied to pickup trucks. Id. at 772. The court found that the ordinance "restricts drivers of pickup trucks from visiting with friends or family by making it illegal to be parked in a residential driveway, or on the hosts' lawn, or in the street in front of the home after 9:00 p.m. even though the vehicle in question is not truly a commercial vehicle. ..."[4]Id. The Fourth District's as-applied review in City of Coral Springs would allow Mr. Kuvin to park his F-150 in his driveway if he lived *647 in Coral Springs.[5] Unfortunately, the Third District's majority opinion denies Kuvin's as-applied challenge as it pertains to the parking of his personal-use pickup in Coral Gables and, as such, expressly and directly conflicts with the Fourth District's holding.
We note that, in City of Nichols Hills, the Oklahoma court expressly agreed with the Fourth District's holding in City of Coral Springs, stating:
Here, as in Proctor v. City of Coral Springs, 396 So.2d 771, 774 (Fla.App. 1981), nothing in the record suggests that such an all-inclusive ordinance is necessary to meet the city's legitimate responsibility of protecting the public health, safety or general welfare of its citizens. Ordinance No. 700, as in City of Coral Springs, "does not speak in terms of weight, width or other relevant concerns, but merely contains a blanket prohibition of all pickup trucks". Id.

Any vehicle that meets the definition of a "private passenger vehicle"-no matter how ugly, rusted or offensive, may be parked in this municipality between the hours of 2:00 a.m. and 5:00 a.m. However, not a single pickup-no matter how new, expensive, or "pleasing to the eye", may be parked in any driveway during these hours. The obvious contradiction belies the City's claim that it has enacted the ordinance to protect the aesthetic integrity of the community.
City of Nichols Hills, 939 P.2d at 19-20.
We agree with the holding and reasoning of the Fourth District in City of Coral Springs as well as the Oklahoma court in City of Nichols Hills.

3. The "Look" of an F-150 Does Not Make It Commercial.

The majority also makes references to the "look" of Mr. Kuvin's F-150 to somehow suggest that this "look" supports its holding. The majority knows that this case does not involve the regulation of a commercial-use vehicle, yet it seizes upon the "look" in an effort to make it commercial. It is like painting lines on a horse to make it "look" like a zebra; it does not make it so. For purposes of constitutional review, the "look" of Mr. Kuvin's F-150 vehicle is wholly irrelevant. No case, until now, has ever suggested that a personal-use light truck, based on its looks, is a commercial vehicle as a matter of law. Instead, the relevant inquiry for courts is the type of vehicle involved and its actual use.
Governments may not use their police powers to regulate the "look" of their citizens' personal-use vehicles. They cannot forbid purple cars any more than a particular brand or category of personal-use vehicle. These areas are simply out of reach of governmental regulation aimed at aesthetics. The majority would allow governments to regulate the types of personal-use vehicles their citizens drive simply based on their outward appearance. Such a holding embraces George Orwell's dystopia, where personal rights are subverted by the government.
Truth be told, the author of this opinion does not particularly like trucks, including the Ford F-150. He would not want to own one and does not like driving alongside or behind one. He finds the F-150 to be bulky the same way some minivans and SUVs are bulky. However, a judge must *648 put aside his or her personal likes and dislikes and apply the law equally and fairly. Although a judge may not like trucks of any kind, he or she must recognize that there are many people who think differently. Indeed, the F-150 is the personal-use vehicle of choice for millions of Americans, including some residents of Coral Gables.
A distinguished former appellate and present federal judge, Daniel T.K. Hurley, who wrote a concurring opinion in City of Coral Springs, aptly termed ordinances such as these as elitist. In examining a similar ordinance, Judge Hurley remarked:
The ordinance does not speak in terms of weight, width or other relevant concerns, but merely contains a blanket prohibition of all pickup trucks. This is demonstrably excessive. It is common knowledge that a sizeable number of citizens, in addition to appellant, utilize pickup trucks for their normal mode of transportation. Many of these vehicles are no longer, wider or heavier than a standard American-made automobile. To ban such vehicles in the name of aesthetics smacks of the rankest form of elitism. ...
Id. at 774.
While affording all appropriate presumptions in favor of the constitutionality of the city ordinances at issue, as applied to appellant's Ford F-150, these ordinances bear no rational relationship whatsoever to aesthetics. City of Nichols Hills, Henley, and City of Coral Springs stand for the proposition that, as applied to a personal-use light truck, a municipality may not exercise its police powers to regulate the parking of such a vehicle based on aesthetic considerations. There is nothing to indicate that property values may be affected by the mere presence of a light truck in a private driveway or public parking space. Without more, there is simply no rational relationship between the parking of a personal-use Ford F-150 in a residential neighborhood or on a public street and aesthetics. That is the case in Coral Gables, as it is in Coral Springs, Nichols Hills, and in every other town in America.
SALTER, J. concurs.
NOTES
[1] The dissent incorrectly states that Kuvin was cited for parking his pickup truck in his driveway.
[2] The City acknowledges that it does not enforce these ordinances against owners of SUVs or station wagons. As we explain later in this dissent, this selective enforcement highlights the not-so-subtle elitism underlying the ordinances and their enforcement.
[3] The term "red cow" is used in Florida to describe a case that is directly on point, that is, a case that not only involves the same animal but also the same color. See Corn v. City of Lauderdale Lakes, 997 F.2d 1369 (11th Cir.1993); United States v. Kopituk, 690 F.2d 1289, 1308 (11th Cir.1982); Stark v. Vasquez, 168 So.2d 140 (Fla. 1964).
[4] Our case is even more compelling than City of Coral Springs since there is no dispute that Kuvin's Ford F-150 is a personal-use vehicle with no commercial markings and does not remotely qualify as a commercial vehicle.
[5] As in City of Coral Springs, Kuvin claimed that the ordinances prevented him from visiting his friends and, thus, violated his First Amendment rights, including the right of association. We do not reach this claim as we find that the ordinances bear no rational relationship to the city's legitimate responsibility of protecting the public health, safety, and welfare.